

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-23-2008

# USA v. Torres

Precedential or Non-Precedential: Precedential

Docket No. 07-1669

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Torres" (2008). *2008 Decisions.* Paper 751.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/751

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-1669

———

UNITED STATES OF AMERICA,

Appellant

v.

JOHNNY TORRES

———

On Appeal from United States District Court
for the District of Eastern Pennsylvania
(D. C. No. 06-cr-00630)
District Judge: Honorable Marvin Katz

———

Argued March 5, 2008
Before: BARRY, JORDAN and HARDIMAN, *Circuit
Judges*.

(Filed: July 23, 2008 )

Robert A. Zauzmer (Argued)
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
        *Attorney for Appellant*

Dennis J. Cogan (Argued)
Cogan, Petrone & Associates
2000 Market Street
Suite 2925
Philadelphia, PA 19103
        *Attorney for Appellee*

---

OPINION OF THE COURT

---

HARDIMAN, *Circuit Judge*.

In this appeal arising under the Fourth Amendment, we consider whether Philadelphia police officers possessed sufficient reasonable articulable suspicion to stop a car. The traffic stop was based on information provided by a taxi driver who called 911 after he saw a man brandish a gun at a gas station. The District Court found that the 911 call did not provide police with reasonable suspicion to effectuate the traffic stop and, accordingly, suppressed the evidence gathered after the stop. Because we find that the totality of the circumstances amounted to reasonable suspicion, we will reverse.

2

## I.

On February 22, 2005, at 2:59 p.m., the Philadelphia Police Department received a 911 call which included the following information:

CALLER: Heading to Philadelphia, Pennsylvania heading North on Broad at South Street. You got a guy with a BMW- 742 or 5I. License plate F Frank Victor Able 7726. Flashed a gun at the Hess station at a Bum [sic] trying to sell roses.

DISPATCHER: Heading North bound, you said?

CALLER: No, negative, he is now turned on South Street you got a cop right in front of him and I'm in back of him.

DISPATCHER: Alright give me the description of the male. Is he Black, White, or Hispanic Sir?

CALLER:            He is Hispanic, 745I Silver BMW, Frank Victor Able 7726 at 13 N. South heading towards the Delaware. You got a cop right in front of him and he is following the cop. I'm behind him in a green cab.

                          *                    *                    *

CALLER:            He's right in front of me. He has a 45, he had it in the console between the seats. He [took] it out and waved it at the bum selling roses at the Hess station. Your cop just turned right on 12th.

DISPATCHER:        All right Sir.

CALLER:            All right and he still, I'm behind him. I'm still on South Street just past 12th, approaching 11th. I'm in a green Avenguard cab.

4

DISPATCHER: Okay, we got the job put out sir. All right, a Hispanic male that's all you have?

CALLER: He's at a red light now at 10th, I'm right behind him.

DISPATCHER: Sir, do not follow him, sir, the Police will be there as soon as possible. He's heading Eastbound on South Street some one will be there sir.

CALLER: All right remember he's got a 45 looks like a Glock in the center console. I was pumping gas at [*sic*] adjacent pump when he waved it at the bum. All right.

DISPATCHER: All right, Thanks.

CALLER: Your [*sic*] welcome, I'm going to peel off.

At 3:02 p.m. — only three minutes after the 911 call was initiated — dispatch radioed officers on patrol and told them that a Hispanic male driving a silver BMW 745i with license

plate FVA-7726 was driving eastbound on South Street, and that the driver had a gun.

Immediately upon receiving the report, officers in the field asked whether the dispatcher "got a complainant" for it; the dispatcher informed them that "no complainant is showing." Within minutes, plainclothes officers observed a BMW 745i matching the dispatcher's description and with license plate FVA-7726 pass them on South Street, approximately twelve blocks from where the taxi driver had initially reported it. Pursuant to department policy, the plainclothes officers relayed the information to uniformed police officers. By 3:07 p.m., uniformed officers spotted the vehicle, stopped it, and found that its driver — Defendant Johnny Torres, a Hispanic male — had a fully-loaded 9 millimeter handgun with one round in the chamber stowed in the pocket of the driver's side door.

A grand jury indicted Torres on one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Torres filed a motion to suppress the weapon and ammunition, arguing that the tip from the taxi driver did not supply reasonable suspicion for the stop. The District Court granted the motion to suppress after a hearing, and the Government appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and our jurisdiction arises under 18 U.S.C. § 3731. The Government argues that the District Court erred in suppressing the handgun and the ammunition. The parties agree that the

6

decision to suppress turns on the question of whether the officers had a right to stop Torres's vehicle pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968).

"In reviewing a suppression order, we exercise plenary review over the District Court's legal conclusions, and we review the underlying factual findings for clear error." *United States v. Laville*, 480 F.3d 187, 190-91 (3d Cir. 2007) (citation omitted). We review *de novo* the District Court's legal conclusion that the officers lacked sufficient reasonable articulable suspicion to effectuate a *Terry* stop. *See Johnson v. Campbell,* 332 F.3d 199, 206 (3d Cir. 2003).

## III.

The Fourth Amendment prohibits "unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) (citation omitted). Under the exception to the warrant requirement established in *Terry*, however, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citation omitted). "Any evidence obtained pursuant to an investigatory stop (also known as a '*Terry* stop' or a 'stop and frisk') that does not meet this exception must be suppressed as 'fruit of the poisonous tree.'" *United States v. Brown,* 448 F.3d 239, 244 (3d Cir. 2006) (citations omitted).

The initial step of a Fourth Amendment suppression analysis requires us to determine the timing of the seizure. "[U]nder *Terry*, in evaluating whether [the officer's] interaction with [the defendant] prior to his arrest amounted to an unreasonable seizure, we must first determine at what moment [the defendant] was seized . . . ." *Johnson*, 332 F.3d at 205. In the case at bar, the District Court found — and the parties do not dispute — that Torres was seized when the officers stopped his car.

Having pinpointed the time of the Fourth Amendment seizure, we next ask "whether that seizure was justified by reasonable, articulable facts known to [the officer] as of that time. . . ." *Id.* When officers are told to investigate a situation by a police dispatcher, as was the case here, the court must look beyond the specific facts known to the officers on the scene to the facts known to the dispatcher. *See United States v. Nelson*, 284 F.3d 472, 481 (3d Cir. 2002) (analyzing the reasonableness of a *Terry* stop by asking whether the officer who, functioning as a dispatcher, had "sufficient grounds to view the tip as reliable and issue the radio bulletin pursuant to which the car was stopped") (citation omitted); *see also Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997) ("The legality of a seizure based solely on statements issued by fellow officers depends on whether the officers who *issued* the statements possessed the requisite basis to seize the suspect.") (emphasis in original). In other words, the knowledge of the dispatcher is imputed to the officers in the field when determining the reasonableness of the *Terry* stop.

The Government concedes that the unidentified taxi driver's tip was "the only information" known by the police when they seized Torres. When the Government relies upon a tip from an unidentified informant as the basis for reasonable suspicion, assessing the reasonableness of a *Terry* stop becomes more intricate. *See Adams v. Williams,* 407 U.S. 143, 146-47 (1972) (noting the reliability problems of anonymous telephone tips and distinguishing anonymous tips from tips given by a known informant whose reputation can be assessed and whose information is immediately verifiable at the scene). The Supreme Court has made clear that "an informant's 'veracity,' 'reliability,' and 'basis of knowledge' . . . [are] 'highly relevant in determining the value of his report.'" *Alabama v. White*, 496 U.S. 325, 328 (1990) (*quoting Illinois v. Gates*, 462 U.S. 213, 230 (1983)). The honesty of the caller, the reliability of his information, and the basis of his knowledge are "closely intertwined issues that may usefully illuminate the commonsense, practical question" of whether there is reasonable suspicion to support a *Terry* stop. *Gates*, 462 U.S. at 230; *see also White*, 496 U.S. at 328-29 (applying the *Gates* analysis to reasonable suspicion context). This Court has identified the specific aspects of tips which indicate their reliability:

> (1) The tip information was relayed from the informant to the officer in a face-to-face interaction such that the officer had an opportunity to appraise the witness's credibility through observation.

9

(2) The person providing the tip can be held responsible if her allegations turn out to be fabricated.

(3) The content of the tip is not information that would be available to any observer. . . .

(4) The person providing the information has recently witnessed the alleged criminal activity.

(5) The tip predicts what will follow, as this provides police the means to test the informant's knowledge or credibility. . . . .

*See Brown,* 448 F.3d at 249-50 (citations and internal quotation marks omitted). Other factors can bolster what would otherwise be an insufficient tip, such as "[the p]resence of a suspect in a high crime area," "[a] suspect's presence on a street at a late hour," "[a] suspect's nervous, evasive behavior, or flight from police," and a suspect's behavior "that conforms to police officers' specialized knowledge of criminal activity." *See id.* at 251 (citations and internal quotation marks omitted). Ultimately, the Court must ask whether the unknown caller's tip "possessed sufficient indicia of reliability, when considering the *totality of the circumstances*, for us to conclude that the officers possessed an objectively reasonable suspicion sufficient to justify a *Terry* stop." *Id.* at 250 (citation omitted) (emphasis added).

Here, having determined that Torres was seized for Fourth Amendment purposes at 3:07 p.m. when police stopped

10

his vehicle, the District Court held that "the anonymous tip did not exhibit sufficient indicia of reliability to provide reasonable suspicion." After noting that the tip did not contain "predictive information" or other "particularized knowledge," and upon concluding that no other factors supported a finding of reasonable suspicion, the District Court granted Torres's motion to suppress. The Government argues that the District Court "ignored substantial indicia of reliability."

Considering the totality of the circumstances present in this case, we agree with the Government that the tip at issue possessed sufficient indicia of reliability to justify the stop of Torres's vehicle. First, the tipster was an eyewitness who had "recently witnessed the alleged criminal activity." *See Brown,* 448 F.3d at 249-50; *see also United States v. Valentine,* 232 F.3d 350, 354 (3d Cir. 2000) (the fact that "the officers in our case knew that the informant was reporting what he had observed moments ago, not what he learned from stale or second-hand sources" weighed in favor of a tip's reliability); *United States v. Wheat*, 278 F.3d 722, 735 (8th Cir. 2001) ("We think that an anonymous tip conveying a contemporaneous observation of criminal activity whose innocent details are corroborated is at least as credible as the one in *White*, where future criminal activity was predicted, but only innocent details were corroborated"). Additionally, the content of the tip was relatively detailed and was given to the 911 dispatcher in play-by-play fashion as the taxi driver was pursuing the man whom he had seen brandishing a weapon moments before. The tipster provided a description of the vehicle — including make, model, and license plate number — while contemporaneously describing the movement of the vehicle. The tipster also stated

11

that he was driving a green cab and freely stated not only the name of his cab company, but also the fact that a police car was in front of the perpetrator.  Finally, the tipster described in some detail the brandishing episode by noting the Hess station and explaining what he was doing when he saw the firearm, the make of it, where he saw it within the assailant's car, the make, model, color, and license plate number of the car, the assailant's race, what the victim was doing when the assault occurred, and the threatening conduct itself..  This information was credibly available to the tipster and it accurately predicted what would follow (*i.e.,* that an Hispanic man would be driving a silver BMW 745i with license plate FVA-7726 near the location provided by the tipster).

The aforementioned facts distinguish this tip from the anonymous one at issue in *Florida v. J.L.*, 529 U.S. 266 (2000). In *J.L.*, the Supreme Court held that an anonymous call to police about a gun-toting man at a bus stop did not supply reasonable suspicion to support a *Terry* stop, where there was no indication that the anonymous caller had observed the crime and where the description of the gunman was vague enough to describe any number of men.  *Id.* at 271-72.  Here, although the taxi driver never gave his name (he was not asked to do so), he did volunteer that he was driving a green taxicab from a specified company.  This information, which identified the informant's employer, further supported the reliability of the tip. *See United States v. Fernandez-Castillo*, 324 F.3d 1114, 1118-19 (9th Cir. 2003) (holding that a tip from an unnamed employee of the Montana Department of Transportation was not anonymous because the tip narrowed the likely class of informants, even though the tip was not corroborated before an officer relied on

12

it to support a *Terry* stop); *see also Edwards v. Cabrera,* 58 F.3d 290, 294 (7th Cir. 1995) (holding that a tip from an unnamed city bus driver "was not anonymous" and supported full probable cause, reasoning: "while the police did not know his name, we can presume his identity was (and is) easily ascertainable by the officers. The officers also knew his occupation. These characteristics permit certain inferences regarding his reliability").

Finally, we note that the tipster neither attempted to, nor had any reason to, conceal his identity; the dispatcher simply neglected to ask him his name. As one of our sister circuits has stated: "[w]e do not fault the officers' choice to forgo extensive credibility checking in order to quickly respond. The business of policemen and firemen is to *act*, not speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process." *United States v. Sanchez*, 519 F.3d 1208, 1211 n.1 (10th Cir. 2008) (emphasis in original) (citations and internal quotations omitted). Moreover, the informant's straightforward and thorough description makes his tip even more trustworthy than other tips which have been found sufficiently reliable to support a *Terry* stop. *See, e.g.*, *United States v. Copening*, 506 F.3d 1241, 1247 (10th Cir. 2007) (finding that an anonymous telephone call supported a *Terry* stop where the informant witnessed a man with a pistol outside a convenience store, provided the license number of the car the suspect drove, and gave a detailed account of the suspect's direction of travel as he followed the suspect in his own car, even though the caller *refused* to give the dispatcher his name); *see also United States v. McBride,* 801 F.2d 1045, 1048 (8th Cir.

13

1986) (finding that a telephone tip from an anonymous caller stating that a man had just left his house with four ounces of heroin and was driving a small silver foreign car bearing a particular license number in a particular direction supported a *Terry* stop, even though police did not spot the car until four hours later at a location approximately eight blocks from the intersection identified by the caller).

To be sure, not all of the indicia of reliability we identified in *Brown* are present here. Nevertheless, although an anonymous tip without *any* indicia of reliability cannot justify a *Terry* stop, *see J.L.*, 529 U.S. at 271-72, a tip need not bear all of the indicia — or even any particular indicium — to supply reasonable suspicion. *See Robertson*, 305 F.3d at 169 (citation omitted). Indeed, "a deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Gates*, 462 U.S. at 233. For instance, the need for predictive information is not required where "an officer had objective reason to believe that a tip had some particular indicia of reliability." *United States v. Perkins*, 363 F.3d 317, 325 (4th Cir. 2004) (citations and internal quotations omitted). "[W]hile predictive information can demonstrate particularized knowledge, other aspects of the tip can reflect particularized knowledge as well." *Nelson*, 284 F.3d at 483-84.

Here, the informant provided a detailed account of the crime he had witnessed seconds earlier, gave a clear account of the weapon and the vehicle used by Torres, and specified his own occupation, the kind and color of the car he was driving, and the name of his employer. The veracity and detail of this

14

information were enhanced by the fact that the informant continued to follow Torres, providing a stream of information meant to assist officers in the field. Thus, the totality of the circumstances leads us to conclude that the taxi driver was an innominate (*i.e.*, unidentified) informant who could be found if his tip proved false rather than an anonymous (*i.e.*, unidentifiable) tipster who could lead the police astray without fear of accountability. *See Valentine,* 232 F.3d at 355; *United States v. Brown*, 496 F.3d 1070, 1075-76 (10th Cir. 2007) ("An unnamed individual who divulges enough distinguishing characteristics to limit his possible identity to only a handful of people may be nameless, but he is capable of being identified and thus is not anonymous. For example, if a tipster says ... 'I wish to remain anonymous, but I have a blue truck and work at the Burger King on a particular avenue,' the person may have provided sufficient clues for an intrepid officer to find and identify him").

Accordingly, we hold that the officers had reasonable articulable suspicion sufficient to justify a *Terry* stop and that the District Court erred in suppressing the fruits of that stop. We will reverse and remand for further proceedings consistent with this opinion.