

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-2009

# USA v. Noble

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4832

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Noble" (2009). *2009 Decisions*. Paper 1384.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1384

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-4832
_____

UNITED STATES OF AMERICA

v.

ROBERT EARL NOBLE,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 06-cr-010E)
District Judge: Honorable Sean J. McLaughlin

_____

Submitted Under Third Circuit LAR 34.1(a)
March 26, 2009

Before: RENDELL, AMBRO and JORDAN, *Circuit Judges*.

(Filed: May 11, 2009)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Robert E. Noble, a parolee, was arrested and charged with possession of a firearm

by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and making counterfeit

obligations or securities, in violation of 18 U.S.C. § 471. After the District Court denied

his motion to suppress drugs, guns, and counterfeiting materials that were seized from his home, Noble pled guilty to possession of a firearm by a convicted felon. However, in his plea bargain, he reserved the right to appeal the District Court's order denying his suppression motion. Now, he appeals the constitutionality of his arrest and the search of his residence, arguing that the District Court applied the wrong standard in judging the propriety of his arrest for a parole violation. Alternatively, he argues that there was no reasonable suspicion for the search or probable cause for the arrest. Because there was reasonable suspicion to support the search and probable cause to support the arrest, we will affirm.

## I.    Background

In 2001, Noble was paroled after having been convicted and sentenced for conspiracy to commit theft by unlawful taking and simple assault. As a condition of his release on parole, Noble agreed to submit to warrantless searches of his person and his home by agents of the Pennsylvania Board of Probation and Parole. Other conditions of his parole included a prohibition on possessing a pager, cell phone, or drug paraphernalia; a prohibition on driving a motor vehicle without proper documentation and his supervising agent's prior written permission; and a requirement that he notify his parole agent within seventy-two hours of changes in his employment status. He was also required to attend drug and alcohol counseling.

2

Noble gave authorities cause to believe that he had violated conditions of his parole prior to his arrest on October 18, 2005. In February of 2005, he was issued a written warning for failing to notify his parole officer, Agent Divell, of a change in his employment status and for failing to attend a drug and alcohol counseling session. In March of 2005, he was issued another written warning after having traveled out of state without permission and having been cited by the state police for operating a motor vehicle without a license. On October 17, 2005, Noble's ex-girlfriend contacted Divell and advised him that she had seen Noble at his residence with a handgun, a cell phone, and illegal drugs. She also informed Divell that Noble had stolen her car and that she had seen him driving. The same day, Divell and another parole officer conducted surveillance at Noble's house. During the surveillance they witnessed Noble get into a car, but, when he saw the parole officers, he got out of the car and went back inside the house. Finally, Divell confirmed with the local police department that Noble had been issued two traffic citations for driving without a license.[1]

On October 18, 2005, Agent Divell and accompanying state police officers went to Noble's residence to arrest him for parole violations. Noble's girlfriend let them in, and Divell and the officers saw Noble sitting on a couch with two cell phones on a coffee

---

[1]Noble reported one of the citations to his parole officer but claimed that his brother was driving the vehicle and used his name. Noble told Divell that he later took his brother to the police station and cleared up the matter. However, when Divell checked on October 18, 2005, both citations were still outstanding in Noble's name.

3

table in front of him. Divell arrested Noble for violating his parole by driving without a license and by possessing cell phones.[2] In plain view, another parole officer spotted counterfeit money in a trash can in the living room. Then Divell and another parole officer began to search the home for evidence of additional parole violations, and Divell found a handgun in a shoebox under Noble's bed. After discovering the gun, Divell obtained a search warrant and, with the assistance of federal agents and local police, searched the remainder of the home, finding marijuana packets and more evidence of counterfeiting.

At the suppression hearing, the District Court denied Noble's motion to suppress, ruling that the parole officers had reasonable suspicion to search Noble's home and arrest him. On appeal, Noble argues that the District Court used the wrong standard for judging the propriety of his arrest,[3] and more particularly, that the parole officers were required to have probable cause to arrest him. He argues that there was no reasonable suspicion for the search or probable cause for the arrest.

---

[2]After the arrest, while officers were still with Noble in his house, a police officer who had cited Noble for driving without a license identified him as the man he had seen committing that violation.

[3]Noble concedes that at the suppression hearing both parties agreed "that the agents needed only reasonable suspicion to arrest [him] for violation of a condition of parole." (Opening Br. at 11.) Now on appeal, he argues that the correct standard is probable cause.

## II.    Discussion[4]

### A.    Noble's Arrest

The Fourth Amendment provides that people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,... and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. To determine whether an arrest is valid, we look to the law of the state where the arrest took place. *Wright v. City of Philadelphia*, 409 F.3d 595, 601 (3d Cir. 2005) (citation omitted). In Pennsylvania, parole officers have police power and authority to arrest parolees, without a warrant, for violations of their parole. 61 P.S. § 331.27. As the government notes in its brief, it is unclear whether a parole officer must have probable cause to arrest a parolee for parole violations, or whether a less demanding standard applies. (Answering Br. at 43 n.13.) We need not answer that question here, however, because the arresting officers clearly had probable cause to arrest Noble.[5]

---

[4] The District Court had jurisdiction under 18 U.S.C. § 3231. We have subject matter jurisdiction over the District Court's final order pursuant to 28 U.S.C. § 1291. In considering the denial of Noble's motion to suppress, "we exercise plenary review over the District Court's legal conclusions, and we review the underlying factual findings for clear error." *United States v. Laville*, 480 F.3d 187, 190-91 (3d Cir. 2007) (citations omitted). We may affirm the District Court's suppression decision on any ground supported by the record. *United States v. Agnew*, 407 F.3d 193, 196 (3d Cir. 2005).

[5] Because the arresting officers had probable cause, it is also unnecessary for us to address Noble's argument that the District Court committed plain error by applying the reasonable suspicion rather than probable cause standard to its Fourth Amendment analysis of the arrest.

5

The Supreme Court has explained that an arrest is made with probable cause if "at the moment the arrest was made, ... the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Divell did not arrest Noble until he had received confirmation from the Erie Police Department that Noble had two active citations for driving without a license, in clear violation of his parole. On that basis alone, Divell had probable cause to arrest Noble for parole violations.

## B.     The Search of Noble's House

We have held that a parole officer need only have reasonable suspicion to conduct a warrantless search of a parolee's home. *United States v. Baker*, 221 F.3d 438, 443-44 (3d Cir. 2000). An officer may base his reasonable suspicion on a tip from an informant, if the tip possesses sufficient indicia of reliability. *Cf. United States v. Torres*, 534 F.3d 207, 211 (3d Cir. 2008) (holding that a tip from a cab driver provided reasonable suspicion to justify *Terry* stop). We have identified some of the specific aspects of tips that may indicate their reliability:

> (1) The tip information was relayed from the informant to the officer in a face-to-face interaction such that the officer had an opportunity to appraise the witness's credibility through observation. (2) The person providing the tip can be held responsible if her allegations turn out to be fabricated. (3) The content of the tip is not information that would be available to any observer. (4) The person providing the information has recently witnessed the alleged criminal activity. (5) The tip

6

> predicts what will follow, as this provides police the means to test the informant's knowledge or credibility.

*Id.* (citation omitted).

In this case, Noble's former girlfriend, Almira Johnson, spoke to Divell face-to-face and told him that Noble had cell phones, drugs, and a gun and had been driving without a license. Johnson's tip included detailed descriptions of the cars Noble had been driving and the gun and drugs she had seen him with. She also provided Divell with the number to the cell phone Noble had been using. After his conversation with Johnson, Divell corroborated a portion of the tip by speaking with the Erie Police and learning that Noble had two active citations for driving without a license. Johnson's tip had sufficient indicia of reliability to give Divell and the officers who assisted him reasonable suspicion that Noble was violating his parole and that evidence of the violations would be in Noble's house. Thus, even without considering other potential justifications for the search,[6] their search of Noble's home was constitutionally sound.

## III. Conclusion

Given the foregoing circumstances, the District Court was correct to deny Noble's motion to suppress. Accordingly, we will affirm.

---

[6] It may be, for example, that the initial search was justified by the evidence of criminality in plain view when the parole officers were admitted to Noble's house. We do not need to consider that or other alternatives, however, as the stated justification is sufficient.

7