NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2980
_____

UNITED STATES OF AMERICA

v.

CAESAR HOLLOWAY,
a/k/a Markus Jackson

CAESAR HOLLOWAY,
                                   Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 09-CR-566)
District Judge: Honorable J. Curtis Joyner
_____

Submitted Under Third Circuit LAR 34.1(a)
July 13, 2012

Before: FUENTES, HARDIMAN, and ROTH, *Circuit Judges*

(Opinion Filed: July 26, 2012)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

On August 24, 2009, a grand jury indicted Caesar Holloway on one count of

possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).

Holloway filed a motion to suppress the gun, arguing that there was not reasonable suspicion for the traffic stop that led to its discovery and his arrest. After losing his motion, Holloway pleaded guilty pursuant to a plea agreement, which provided that he could appeal the District Court's suppression ruling. Because we find that the totality of the circumstances amounted to reasonable suspicion, we will affirm.

**I.**

Because we write solely for the parties, we recite only those facts relevant to this opinion.

The parties do not dispute the following facts revealed at Holloway's suppression hearing. On July 17, 2009, at 10:24 and 10:26 p.m., the Philadelphia Police Department received two 911 calls, from the same informant, reporting the location of a man driving a burgundy Mercury with Pennsylvania license plate FPP-3616, who had "just pulled a gun." App. 90b. The caller explained that he was driving behind the burgundy car and updated the 911 operator as their location changed. In particular, during the second call, the caller alerted that they were about to pass a police station. Both men were driving in a high crime area. The caller was not asked for his name, and did not volunteer it, but his cellular number, cellular provider, and location were available to the police. The police dispatcher deemed the call an emergency and radioed the description of the car and location of the suspect to patrolling officers. Within five minutes of the first 911 call, the burgundy car was located and stopped about one mile from the location initially provided by the caller. Holloway was the only person in the car, and a loaded black handgun was in plain view on the driver's side floorboard.

A grand jury indicted Holloway on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).  Holloway filed a motion to suppress the weapon, arguing that the officers did not have reasonable suspicion for the stop.  After the District Court denied his motion, Holloway conditionally pleaded guilty, reserving his right to appeal.  The District Court imposed a sentence of 96 months' imprisonment, a three-year term of supervised release, a fine of $1,000, and a special assessment of $100.  Holloway now appeals the District Court's denial of his motion to suppress.[1]

## II.

In reviewing a district court's suppression ruling, we review the underlying factual findings for clear error, and we exercise plenary review over the court's legal conclusions.  *United States v. Silveus*, 542 F.3d 993, 999 (3d Cir. 2008).

Holloway first argues that the gun should be suppressed under Article 1, Section 8 of the Pennsylvania Constitution, maintaining that this provision provides more stringent protections than the Fourth Amendment of the United States Constitution.  However, this argument is waived due to Holloway's failure to raise it in the District Court.  *See United States v. Rose*, 538 F.3d 175, 177 (3d Cir. 2008) ("In our Court, suppression issues raised for the first time on appeal are waived absent good cause…").  In any event, even if we were to agree that the stop violated Pennsylvania law, "evidence obtained in accordance with federal law is admissible in federal court—even though it was obtained by state

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

officers in violation of state law." *United States v. Stiver*, 9 F.3d 298, 300 (3d Cir. 1993)

(quoting *United States v. Rickus,* 737 F.2d 360 at 363-64 (3d Cir. 1984)). Thus, we will

examine Holloway's arguments regarding the validity of the stop under federal standards.

The Fourth Amendment protects against "unreasonable searches and seizures."

U.S. Const. amend. IV. A traffic stop is a seizure for purposes of the Fourth Amendment.

*United States v. Johnson*, 592 F.3d 442, 447 (3d Cir. 2010). "Generally, for a seizure to

be reasonable under the Fourth Amendment, it must be effectuated with a warrant based

on probable cause." *United States v. Robertson,* 305 F.3d 164, 167 (3d Cir. 2002) (citing

*Katz v. United States*, 389 U.S. 347, 356–57 (1967)). A well-established exception to the

warrant requirement permits an officer to "conduct a brief, investigatory stop when the

officer has a reasonable, articulable suspicion that criminal activity is afoot." *United

States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) (quoting *Illinois v. Wardlow,* 528 U.S.

119, 123 (2000)). A reasonable, articulable suspicion must be supported by "specific and

articulable facts which, taken together with rational inferences from those facts,

reasonably warrant [the] intrusion." *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir.

2003) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

Holloway contends that the stop of his car was unreasonable because the officers

relied exclusively on an anonymous tip, which, he argues, did not establish a sufficient

basis of suspicion. Both this Court and the Supreme Court have acknowledged that an

anonymous tip that a person has a gun, without additional corroboration, lacks the indicia

of reliability needed to justify a stop under the reasonable suspicion standard. *Florida v.

J.L.,* 529 U.S. 266, 270 (2000); *see United States v. Brown*, 448 F.3d 239, 249 (3d Cir.

4

2006). However, an anonymous tip can be the basis for reasonable suspicion if accompanied by specific indicia of reliability. *J.L.,* 529 U.S. at 270. To determine whether there are specific indicia of reliability, an inquiry into the totality of the circumstances is necessary to determine whether "the officers possessed an objectively reasonable suspicion sufficient to justify a *Terry* stop." *United States v. Torres*, 534 F.3d 207, 211 (3d Cir. 2008) (citation omitted).

In *United States v. Torres*—a case with facts strikingly similar to those in this case—we outlined five factors to assess whether a tip is reliable:

> (1) The tip information was relayed from the informant to the officer in a face-to-face interaction such that the officer had an opportunity to appraise the witness's credibility through observation.
>
> (2) The person providing the tip can be held responsible if her allegations turn out to be fabricated.
>
> (3) The content of the tip is not information that would be available to any observer…
>
> (4) The person providing the information has recently witnessed the alleged criminal activity.
>
> (5) The tip predicts what will follow, as this provides police the means to test the informant's knowledge or credibility[.]

*Id.* at 211 (quoting *Brown*, 448 F.3d at 249-50). Additionally, we recognized other facts which may bolster an otherwise insufficient tip, including:

> the presence of a suspect in a high crime area, a suspect's presence on a street at a late hour, a suspect's nervous, evasive behavior, or flight from police, and a suspect's behavior that conforms to police officers' specialized knowledge of criminal activity.

*Id.* (citation and internal quotation marks omitted). In evaluating these factors in *Torres*, we held that a 911 call from an unnamed taxi driver reporting that a man was brandishing

5

a gun in his car possessed sufficient indicia of reliability. We recognized that the caller was an eyewitness to a recently committed crime, the tip included a detailed description of the suspect's car—including the make, model, and license plate number—and location, and the caller provided the name of his employer. *Id.* at 211-12. Additionally, we noted that the taxi driver did not request to remain anonymous, but was simply not asked to identify himself. *Id.* at 212-13.

These facts are directly analogous to the instant case: here, the caller was an eyewitness to a recently committed crime, the tip provided a detailed description of the vehicle—including the make, color, and license plate number—while contemporaneously describing the movement of the vehicle, and the caller informed the dispatcher when he and Holloway were about to pass a police station, providing the police with ample opportunity to identify him. This information was credibly available to the caller and it accurately predicted what would follow, namely that Holloway would be found near the reported location with a gun. In addition, the tip was further bolstered by the fact that Holloway was driving in a high-crime area, at a late hour.

Holloway argues that his case is distinguishable from *Torres* for two reasons: first, the tipster in the instant case did not report that he was "brandishing" the gun; and second, the taxi driver in *Torres* was less anonymous than the tipster in this case because the taxi driver provided his cab company to the 911 operator. Both of these arguments are unavailing. Despite Holloway's first contended distinction, it is a crime to possess a handgun on a public street in Philadelphia. *See* 18 Pa. Cons. Stat. § 6108; *see also Commonwealth v. Bigelow*, 399 A.2d 392, 396 (Pa. 1979) (recognizing that licensure is

6

merely an affirmative defense).  And his second distinction, regarding the level of anonymity, also fails because the caller in this case made no effort to conceal his identity and likely knew that he could be identified by his cellular phone.  *See, e.g.*, *United States v. Copening*, 506 F.3d 1241, 1247 (10th Cir. 2007) ("The caller should have expected that 911 dispatch tracks incoming calls and that the originating phone number could be used to investigate the caller's identity.").

"Thus, the totality of the circumstances leads us to conclude that the caller was an innominate (*i.e.,* unidentified) informant who could be found if his tip proved false rather than an anonymous (*i.e.,* unidentifiable) tipster who could lead the police astray without fear of accountability." *Torres*, 534 F.3d at 213 (citation omitted).  Accordingly, we conclude that "the officers had reasonable articulable suspicion sufficient to justify a *Terry* stop." *Id.*

## III.

For the foregoing reasons, we will affirm the District Court's judgment.

7