NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3730
_____

UNITED STATES OF AMERICA

v.

MICHAEL TYRONE WALLER,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 2-14-cr-00040-001)
Honorable Nora B. Fischer, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
October 7, 2016

BEFORE:  SHWARTZ, COWEN, and ROTH, Circuit Judges

(Filed: November 8, 2016)

_____

OPINION*
_____

COWEN, Circuit Judge.
_____

*This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Michael Tyrone Waller appeals from the criminal judgment entered by the United States District Court for the Western District of Pennsylvania. We will affirm.

I.

Waller was indicted on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Specifically, a pistol (which contained ammunition) fell out of his waistband during a struggle with Pittsburgh police officers that ensued after they had pulled over a Chevrolet Malibu in which he was a passenger on the basis of information provided by a witness, R.N., to a nearby shooting. Acting pro se, Waller moved to suppress this evidence, and the District Court conducted an evidentiary hearing.

The District Court denied his motion. Specifically, it found that law enforcement did not "seize" Waller until after the firearm had fallen from his waistband. "Here, Waller did not submit to the authority of the officers until after the officers tas[ed] him and, therefore, finally were able to physically seize him to place him under arrest." United States v. Waller, Criminal No. 14-40, 2014 WL 4272765, at *6 (W.D. Pa. Aug. 29, 2014). "Having determined that the police seized Waller at the time they arrested him and after the discovery of the firearm, Defendant's instant Motion to Suppress fails." Id. The District Court then determined that, in any event, there was reasonable suspicion for a Terry stop. See Terry v. Ohio, 392 U.S. 1 (1968).

Waller filed a pro se motion to dismiss the indictment for miscarriage of justice and false information, which the District Court construed as a motion for reconsideration. "The Motion generally argues that Defendant 'has direct evidence that officers fabricated

2

the existence of' 'R.N.,' the tipster that police officers claimed provided a description of the car in which Mr. Waller was found." United States v. Waller, Criminal No. 14-40, 2015 WL 1198109, at *1 (W.D. Pa. Mar. 16, 2015) (quoting A33). Waller was permitted to review a redacted copy of R.N.'s grand jury testimony, and the District Court then denied his reconsideration motion. It determined, inter alia, that this witness's grand jury testimony did not provide a basis for the District Court to reconsider its previous ruling.

Represented by his current attorney (who had previously served as stand-by counsel), Waller was found guilty by the District Court in a bench trial and sentenced to a term of imprisonment of 120 months.

II.

We agree with the government that, given his failure to submit to the police officers' show of authority, Waller was not seized until the officers physically removed him from the Chevrolet Malibu.[1] "A seizure occurs when there is either (a) 'a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,' or (b) submission to 'a show of authority.'" United States v. Brown, 448 F.3d 239, 245 (3d Cir. 2006) (quoting California v. Hodari D., 499 U.S. 621, 626 (1991)).

---

[1] The District Court had jurisdiction over this criminal proceeding pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

In reviewing the District Court's denial of the suppression motion, we exercise plenary review with respect to the District Court's legal determinations as well as its application of the law to the facts. See, e.g., United States v. Burnett, 773 F.3d 122, 130 (3d Cir. 2014); United States v. Thompson, 772 F.3d 752, 758 (3d Cir. 2014). However, factual findings are reviewed for clear error. See, e.g., Burnett, 773 F.3d at 130. We review an order denying a motion for reconsideration for abuse of discretion. See, e.g., United States v. Dupree, 617 F.3d 724, 732 (3d Cir. 2010).

According to Waller, he submitted to governmental authority immediately after the vehicle was pulled over. It appears that the police officers made a show of authority because a reasonable person in Waller's position would not feel free to leave, decline the officers' requests, or otherwise terminate the encounter. See, e.g., Brendlin v. California, 551 U.S. 249, 255 (2007). However, Waller did not submit to this exercise of authority through either affirmative acts or passive acquiescence. See, e.g., United States v. Lowe, 791 F.3d 424, 431 (3d Cir. 2015) ("But different factors must be considered when an individual is already stationary, or 'when an individual's submission to a show of governmental authority takes the form of passive acquiescence.'" (quoting Brendlin, 551 U.S. at 255)).

We recently explained that "[a]ction—not passivity—has been the touchstone of our analysis." Id. at 433. In this case, Waller did more than merely refuse to comply with the police officers' orders. He was ordered to exit the vehicle, but refused to do so (claiming that the car was pulled over for racial reasons and demanding to speak with a supervisor). After Sergeant Charles Henderson arrived on the scene, he remained non-compliant and was forcibly removed from the car. Even before the supervisor arrived, Officer Jonathan Craig ordered Waller to keep his hands on the dashboard. But he reached his left hand down to touch the left side of his body—where a firearm was subsequently discovered. According to Craig, "I would instruct him again to leave his hands on the dashboard, and he would put hands back on the dashboard and repeatedly do

4

that action" (App'x Vol. II at 207). [2]  See, e.g., Lowe, 791 F.3d at 434 ("Rather, we hold that when a stationary suspect reacts to a show of authority by not fleeing, *making no threatening movement or gesture, and remaining stationary,* he has submitted under the Fourth Amendment and a seizure has been effectuated." (emphasis added)).

Furthermore, this "seizure was justified by 'reasonable, articulable facts'" known to the police officers at that point in time.  United States v. Torres, 534 F.3d 207, 210 (3d Cir. 2008) (quoting Johnson v. Campbell, 332 F.3d 199, 205 (3d Cir. 2003)).  The District Court appropriately began with the detailed information furnished by R.N.  See, e.g., United States v. Johnson, 592 F.3d 442, 450-51 (3d Cir. 2010) (noting importance of specificity).  According to Officer Aaron Obsenica, R.N. told him the following shortly after the shooting:

1.  He was at the bar until 1:50 a.m., at which time he walked to his vehicle in the parking lot.  [(App'x Vol. II at 177.)]

2.  He heard about five gunshots, and observed a red Chevrolet Malibu and a black-colored vehicle parked in front of Baker's Dairy.  [(Id.)]

3.  He heard the shots and turned to look in the direction where he believed they came from, which was toward Baker's Dairy, where he saw the two vehicles.  [(App'x Vol. II at 186.)]

---

[2] In Lowe, this Court determined that the defendant submitted to the exercise of authority even though he failed to comply with the order to show his hands.  Lowe, 791 F.3d at 432-34.  Unlike Waller, Lowe "stayed put" when the officers confronted him.  Id. at 433.  "At that point, the record does not reflect that he made any threatening gesture or moved his hands or arms in any way, much less that he reached for a weapon or otherwise acted to rebuff the officers' authority."  Id.; see also Brendlin, 551 U.S. at 261-62 (indicating that passenger submitted once car came to stop and he simply stayed inside vehicle).

4. He observed two black males in that area and the two vehicles fled at a high rate of speed down Hamilton Avenue, with one turning left and one turning right. [(App'x Vol. II at 177.)]

Waller, 2014 WL 4272765, at *1-*2. R.N. provided the police officer with his first and last name, address, date of birth, and telephone number. See, e.g., Torres, 534 F.3d at 211-12 (noting that fact tipster can be held responsible for fabrications indicates reliability). Officer Dustin Rummel issued a dispatch indicating that there was a red Chevrolet Malibu in the area that had possibly been involved in the shooting and was seen fleeing on Frankstown Road toward Washington Boulevard.[3] Craig and his partner then saw a red (or maroon) Chevrolet Malibu at the intersection of North Homewood and Hamilton Avenues, approximately one block away from the shooting. See, e.g., id. at 212 ("This information was credibly available to the tipster and it accurately predicted what would follow (i.e., that an Hispanic man would be driving a silver BMW 745i with license plate FVA-7726 near the location provided by the tipster)."). The District Court also appropriately took into account the time and place (i.e., approximately 2:00 a.m. in a high crime area). See, e.g., United States v. Valentine, 232 F.3d 350, 356-57 (3d Cir. 2000) (highlighting lateness of hour and location). After the car was pulled over, Waller refused to exit the vehicle, made furtive gestures toward his left waistband despite being repeatedly ordered to keep his hands on the dashboard, and, even after the supervisor arrived, still refused to get out of the car. Even if "[n]obody was observed getting into or out of a maroon Chevy Malibu near the scene of the shooting" and "[n]obody was [directly] observed shooting from or at the maroon Chevy Malibu" (Appellant's Brief at

---

[3] It appears that Rummel meant to say "Hamilton" instead of "Frankstown."

6

20), the District Court, given these circumstances, did not commit reversible error by finding that the police officers possessed "'reasonable, articulable suspicion'" of criminal activity and thereby conducted a proper investigatory stop under Terry. Torres, 534 F.3d at 210 (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)).

According to Waller, R.N.'s own grand jury testimony contradicted Obsenica's testimony at the suppression hearing. Arguing that the District Court gave this grand jury testimony "short shrift," he goes on to claim that R.N. testified under oath that he was by himself at the bar (and not with the victim as Obsenica asserted) and that he merely saw a red car (as opposed to a red Chevrolet Malibu) as well as three men (not two men). (Appellant's Brief at 20.) However, the critical issue here was what R.N. told the police at the crime scene. In denying Waller's reconsideration motion, the District Court observed that Obsenica's account was corroborated by his own (relatively contemporaneous) investigative report. "As such, Defendant has presented nothing to the Court that causes it to change its mind." Waller, 2015 WL 1198109, at *7. As the District Court also succinctly explained, "'[m]aroon' is 'a dark red.'" Id. (quoting *Maroon,* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007)).

### III.

We will affirm the judgment of the District Court.