**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3374
_____

UNITED STATES OF AMERICA

v.

BRIAN ACOSTA,
                         Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:16-cr-00164-001)
District Judge: Honorable Christopher C. Conner
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 7, 2018

Before: HARDIMAN, KRAUSE, and BIBAS, *Circuit Judges*

(Filed: October 4, 2018)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

BIBAS, *Circuit Judge*.

Neither an anonymous tip nor a suspect's flight from police creates probable cause on its own. But those facts, combined with others, can add up to probable cause. That is what happened here.

Brian Acosta moved to suppress evidence that the police found, claiming that they unconstitutionally stopped, frisked, and arrested him. But the police had ample reason for their actions. They had an anonymous tip that someone matching Acosta's description was in the area with a gun; the area was known for crime; Acosta fled once he saw the police; he clutched something to his side as he ran; and during the chase, he threw away a gun that the police quickly found. So the police had reasonable suspicion for their stop and frisk, and probable cause for their arrest. We will affirm.

## I. BACKGROUND

This case began with a tip. One day in October 2015, around 6 p.m., Harrisburg Police Officers John Fustine and Michael Rudy were in separate unmarked cars when both heard a call from the dispatcher: a white man in a black shirt and a camouflage hat was walking near 20th Street and Kensington with a gun. Officer Fustine drove there in his unmarked car and soon spotted a man matching that description. So the officer got out of his car and followed the suspect, Acosta, on foot. Officer Fustine had arrested Acosta once before.

Officer Fustine radioed Officer Rudy, who soon arrived and started following Acosta in his unmarked car. Both officers were in uniform. And when Officer Fustine's radio went off, Acosta turned, saw him, and immediately started running away.

2

The officers gave chase. As Acosta fled down an alleyway, Officer Fustine noticed that Acosta was holding his right side while he was running. When Acosta darted from the alley onto Kensington Street, Officer Fustine lost sight of him. Officer Rudy took up the chase and followed Acosta through a backyard before losing him. At some point, while out of both officers' sight, Acosta tossed his gun in the backyard.

Officer Fustine saw Acosta emerge from the backyard and chased him for a few blocks. He caught Acosta, detained him, and frisked him. Meanwhile, Officer Rudy retraced Acosta's path, looking for evidence, and found the loaded gun. Officers arrested Acosta and searched him, finding a black ski mask in his pocket.

Acosta was charged under 18 U.S.C. §922(g) with being a felon in possession of a firearm. He moved to suppress the gun and his statements connected with this arrest. After an evidentiary hearing, the District Court denied his motion. Acosta then pleaded guilty to both counts without a plea agreement.

He now appeals the denial of his motion to suppress. We review the District Court's factual findings for clear error and its legal conclusions de novo. *United States v. Torres*, 534 F.3d 207, 209 (3d Cir. 2008).

## II.  THE FACTS ADDED UP TO REASONABLE SUSPICION AND THEN PROBABLE CAUSE

Acosta claims that we must suppress the evidence because the officers lacked probable cause to arrest him. But the totality of the circumstances—the tip, flight, neighborhood, and gun—was enough to conclude that Acosta "had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

First, the officers were free to retrieve the gun. Acosta abandoned it while fleeing, before he was seized. So it was not the fruit of any seizure. *California v. Hodari D.*, 499 U.S. 621, 629 (1991).

Second, the officers had the reasonable suspicion they needed to detain and frisk Acosta. That was their first seizure of him. *See id.* at 624-25. At that point, they had not yet arrested him. So they needed only reasonable suspicion: an "articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *see Terry v. Ohio*, 392 U.S. 1, 24-27 (1968).

An anonymous tip, without more, does not create reasonable suspicion. That is true even if the officers find someone matching the tip's description at the right place. *Florida v. J.L.*, 529 U.S. 266, 271-72 (2000). Nor is unprovoked flight, standing alone, enough to create reasonable suspicion (or to raise reasonable suspicion to probable cause). *See United States v. Navedo*, 694 F.3d 463, 470-71, 474 (3d Cir. 2012). Nor is an anonymous tip about someone in a known high-crime area. *United States v. Lowe*, 791 F.3d 424, 434-35 (3d Cir. 2015). So Acosta contends that the officers lacked reasonable suspicion to detain him.

But we consider the totality of the circumstances, not each fact in isolation. *Navedo*, 694 F.3d at 468, 470. And here, the totality of the circumstances suggested crime: The officers received a tip. They found someone matching the tipster's description in the right place. The area was known for crime. And the suspect fled without provocation, clutching his side in a manner consistent with having a gun. *See Wardlow*, 528 U.S. at 124-25 (holding that "unprovoked flight" in a "high crime area" added up to reasonable suspicion); *United States v. Valentine*, 232 F.3d 350, 356-57 (3d Cir. 2000) (holding that a face-to-

4

face tip, in a high-crime area, in the middle of the night, and evasive suspects added up to reasonable suspicion).

Third, the officers had the probable cause needed to arrest and search Acosta after finding the gun. Probable cause requires "reasonably trustworthy information … sufficient to warrant a prudent man in believing that [Acosta] had committed or was committing an offense." *Beck*, 379 U.S. at 91. But the officers did not have to "contemplate[ ] the specific offense [with] which" Acosta was ultimately charged. *United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007).

A reasonable police officer could have believed that Acosta had committed a crime. The officers got a tip that someone matching Acosta's description had a gun. They saw Acosta fleeing with his hand at his side as if he had a gun. And then they retraced Acosta's flight path and found the gun. That tip, flight, and discovery would lead a reasonable officer to think that Acosta had committed a crime, perhaps by possessing the gun illegally or having used it to commit a crime. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 586-88 (2018); *United States v. Hensley*, 469 U.S. 221, 224, 235-36 (1985) (holding that there was probable cause when an officer saw a gun on someone he knew was a convicted felon); *Navedo*, 694 F.3d at 474 (noting that unprovoked flight can establish probable cause if there are other circumstances that indicate "an individual is engaged in criminal activity").

The officers thus had probable cause to arrest Acosta and search him. So we will affirm.