**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 19-2755

———————

UNITED STATES OF AMERICA

v.

ZIDRE CEPHAS,
                                   Appellant

———————

On Appeal from the United States District Court
for the District of Delaware
(D. Del. No. 1-18-cr-00019-001)
District Judge: Hon. Richard G. Andrews

———————

Submitted pursuant to Third Circuit L.A.R. 34.1(a)
April 2, 2020

Before: GREENAWAY, JR., PORTER, MATEY, *Circuit Judges*.

(Opinion filed: April 15, 2020)

———————

OPINION*

———————

MATEY, *Circuit Judge.*

Zidre Cephas argues his conviction for illegal possession of a firearm resulted from

an illegal stop by law enforcement. Finding the seizure constitutional, we will affirm.

———————

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does
not constitute binding precedent.

# I. BACKGROUND

Officer Molly McNulty received a text message from a known informant about two men in possession of drugs in Wilmington, Delaware. McNulty called the tipster, who described two men on the steps of a house at a specific intersection. McNulty promptly relayed the tip to her colleague, Corporal Darriel Tynes.

Tynes drove to the location provided by the informant and saw two men sitting in front of the residence at the identified intersection, one of whom was Cephas. Tynes approached and asked both men for identification, and Cephas complied. But while Tynes was using his on-person radio to check for outstanding warrants, Cephas stood up without warning and started to walk into the house. Tynes told him to sit down. Cephas first complied, sitting down for a few seconds before getting up again. Tynes then tried to arrest Cephas, directing him to put his hands behind his back. Instead, Cephas began to run as Tynes attempted to apply handcuffs, requiring Tynes to wrestle him to the ground. A search of Cephas's pockets uncovered drugs and a gun.

The United States charged Cephas with illegally possessing a firearm. He moved to suppress the gun, arguing that it was obtained in violation of the Fourth Amendment. The District Court denied that motion, and Cephas later pleaded guilty. His plea agreement allows him to challenge the District Court's ruling on the search, the sole issue raised in this appeal.[1]

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's fact findings for clear error, but exercise plenary review over its legal conclusions, including its determination that the

## II. DISCUSSION

Cephas argues that Tynes lacked reasonable suspicion to stop him, making the gun the fruit of an illegal seizure. We disagree.[2]

### A. The Stop

The Fourth Amendment to the United States Constitution allows police officers to briefly stop an individual—i.e., to conduct a "*Terry* stop," *see Terry v. Ohio*, 392 U.S. 1 (1968)—if the officers "ha[ve] a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Although a "mere hunch" will not suffice, officers need not have "proof of wrongdoing by a preponderance of the evidence"; in fact, "the level of suspicion the standard requires" is even "less than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014). And whether reasonable suspicion exists at any moment is a context-dependent analysis considering "the totality of the circumstances—the whole picture," *United States v. Cortez*, 449 U.S. 411, 417 (1981), and which turns on "both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330 (1990). We look at the circumstances at the moment an actual stop occurs—when law enforcement officers use "physical force to restrain [the individual's] movement" or when the individual "submi[ts] to a show of authority." *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006); *see also*

---

seizure was supported by reasonable suspicion. *United States v. Johnson*, 592 F.3d 442, 447 (3d Cir. 2010).

[2] Cephas's argument focuses solely on the legality of the initial stop.

*id.* ("[I]f a suspect . . . does not submit to an officer's show of authority, there is no seizure and no Fourth Amendment claim.").

The parties dispute when, exactly, the stop occurred here. The Government argues that Cephas was not stopped until Tynes tried to handcuff him; Cephas says that he was stopped when Tynes asked for identification. But merely asking for identification does not qualify as a "stop." *See United States v. Smith*, 575 F.3d 308, 312 (3d Cir. 2009) (noting that "even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions and ask for identification"). And Cephas immediately sought to leave, so he clearly had not submitted to Tynes's command. Cephas also argues that a stop occurred when Tynes first directed him to sit down, a command he followed. So we will assume that Cephas was detained at that moment. *See United States v. Coggins*, 986 F.2d 651, 652, 654 (3d Cir. 1993) (finding that a seizure occurred when defendant submitted to officer's request to "sit down and wait").

## B. Tynes Had Reasonable Suspicion

### 1. The Tip Was Reliable

Information relayed to police by a third party can support a *Terry* stop if "the communication . . . possessed sufficient indicia of reliability." *Brown*, 448 F.3d at 250. A key factor in this reliability analysis is the identity of the tipster: while anonymous tips may be reliable enough, *see Navarette*, 572 U.S. at 404, courts give greater weight to tips from "known informant[s] whose reputation[s] can be assessed and who can be held responsible if [their] allegations turn out to be fabricated." *Florida v. J.L.*, 529 U.S. 266, 270 (2000).

4

McNulty knew the tipster's "precise identity." (App. at 77.) The two had several previous interactions, during which the tipster had provided credible information leading to at least one arrest. *See Adams v. Williams*, 407 U.S. 143, 146 (1972) (affirming constitutionality of *Terry* stop based on tip where the "informant was known to [the officer] personally and had provided [the officer] with information in the past"). And on the day in question, the tipster contacted McNulty directly through her private cell phone, on which McNulty had the tipster's name saved. *See United States v. Nelson*, 284 F.3d 472, 482 (3d Cir. 2002) (holding a tip reliable where informant "had a previous relationship with the police," "used a private line," and "asked for [a specific police officer] by name").

Cephas argues more was needed noting, among other things, that McNulty had no face-to-face interaction with the tipster, and that the tipster did not explain or provide the basis for the information provided. But we have always examined the "totality of the circumstances," with "no single factor [being] dispositive or even necessary." *United States v. Johnson*, 592 F.3d 442, 449 (3d Cir. 2010). Here, on balance, we conclude the tip was reliable. *Cf. United States v. Torres*, 534 F.3d 207, 212 (3d Cir. 2008) (concluding an anonymous tip was reliable because police knew the identity of the informant's employer).

2.      Tynes Had Reasonable Suspicion to Stop Cephas

Tynes also had "a particularized and objective basis" for believing that Cephas and his companion were engaged in criminal activity. *United States v. Goodrich*, 450 F.3d 552, 560 (3d Cir. 2006). Cephas argues that Tynes lacked reasonable suspicion because he did

5

not observe drug activity when he arrived on the scene. And Cephas notes the men's clothing did not perfectly match the tipster's description.[3]

But the totality of the facts tell a different story. Cephas and his companion were the only two individuals at the intersection. *See Goodrich*, 450 F.3d at 562–63. The location was in a "[h]igh-drug, high-crime area." (App. at 97.) *See United States v. Valentine*, 232 F.3d 350, 356–57 (3d Cir. 2000). And Tynes's interaction with Cephas began less than fifteen minutes after police received the tip. *See Goodrich*, 450 F.3d at 562.

And we cannot ignore Cephas's attempt to walk away from Tynes after their initial interaction. Tynes thought it was "odd" that Cephas would walk into the house while Tynes was holding his identification, and believed Cephas might have been "trying to escape" or "to get rid of" contraband. (App. at 106–08.) Tynes was also concerned for his safety, and wondered whether Cephas was "retrieving a weapon" or "[c]all[ing] more people outside the house" to "surround[]" him. (App. at 107.) Taken together, it is reasonable to interpret Cephas's action as "nervous, evasive behavior." *Wardlow*, 528 U.S. at 124. And looking at the "totality of circumstances," reasonable suspicion existed for the stop. *Johnson*, 592 F.3d at 449.

---

[3] The tipster said that one of the men "was wearing blue jeans and a gray shirt, and the other . . . a white shirt and white shorts." (App. at 77.) The District Court found that the tipster's sartorial description was accurate on "three out of the four items of clothing" mentioned, but does not specify which item was erroneously described. (App. at 13.) Cephas asserts that both he and the other man were wearing black pants, but does not otherwise challenge the tip's accuracy.

## III. CONCLUSION

Because the police possessed reasonable suspicion, the *Terry* stop of Cephas satisfied the Fourth Amendment. We will therefore affirm the District Court's order denying Cephas's motion to suppress.