**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-4438
_____

UNITED STATES OF AMERICA

v.

SAM STALLINGS,
a/k/a Craig Gay

SAM STALLINGS,
Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 09-cr-00368-001)
District Judge:  Honorable Paul S. Diamond

_____

Submitted Under Third Circuit LAR 34.1(a)
January 17, 2013

_____

Before: SMITH, CHAGARES and BARRY, Circuit Judges

(Opinion Filed:  February 6, 2013)

_____

OPINION

_____

BARRY, Circuit Judge

Appellant Sam Stallings was convicted following trial of being a felon in

possession, in violation of 18 U.S.C. § 922(g)(1), and was sentenced to 96 months' imprisonment. He appealed. The only issue before us on appeal is whether the District Court correctly determined that the officers had reasonable suspicion for the *Terry* stop made of Stallings and, thus, that his motion to suppress was properly denied. We will affirm.

## I.

On the night of April 4, 2009, Philadelphia police officers Ivan Rosado and David Marcellino were on patrol in a neighborhood in northwest Philadelphia. The neighborhood is considered a high-crime area that has "a lot of gun crimes, a lot of shootings, [and] a lot of robberies." App. 41.

At approximately 8:15 p.m., a woman signaled the officers as they approached the corner of 21st and Medarie Streets. When the officers stopped to speak with her, she told them that there was an African-American man armed with a gun, sitting in a black Cadillac with chrome rims around the corner. The officers immediately went to investigate. As they rounded the corner onto Chelten Street, they saw a black Cadillac with chrome rims parked directly facing them. As they drove past the Cadillac, the officers noticed an African-American man, later identified as Stallings, reclining in the driver's seat and talking on his cell phone. When Stallings saw the officers, he lowered his seat.

The officers doubled back, parked behind the Cadillac, and shone a light on it.

2

They then approached the car, with Officer Rosado on the driver's side and Officer Marcellino on the passenger's side. Officer Rosado knocked on the driver's window: Stallings looked at him, but otherwise did not respond and continued to hold his cell phone in his left hand. His right hand, however, was obscured, and this concerned Officer Rosado. Officer Rosado told Stallings to "open the door." App. 30. Stallings ignored the order. Still concerned that he could not see Stallings' right hand, Officer Rosado opened the driver's side door and said to Stallings that "somebody just said you have a gun. Is there any weapons in this car?" *Id.* Stallings asked "who called the cops on me?" *Id.* Officer Rosado patted Stallings' waist area while he sat in the car, and felt no weapon, but because Stallings' hands were shaking and he appeared "really nervous," he told Stallings to step out of the car so that he could be frisked. *Id.*

Meanwhile, Officer Marcellino approached the open driver's door. Given the position of the seat, the floor underneath the seat was visible, and when Officer Marcellino shone his flashlight on the floor area he saw the handle of a gun--a 9mm semi-automatic handgun. A subsequent search of the car uncovered a semi-automatic rifle in the trunk.

Before trial, Stallings moved to suppress evidence of the two weapons found during the search of his Cadillac, arguing that reasonable suspicion to conduct the *Terry* stop did not exist because the anonymous tip that led to the stop was insufficiently

3

reliable.[1] The District Court concluded that the totality of the circumstances, including the reliable tip, high-crime environment, and Stallings' suspicious actions, created reasonable suspicion to believe that criminal activity was afoot.

## II.[2]

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV; *Horton v. California*, 496 U.S. 128, 133 (1990). An established exception to the general rule that searches without a warrant are presumptively unreasonable is a *Terry* stop, that is, "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Moreover, an officer may then frisk a person "where he has reason to believe that he is dealing with an armed and dangerous individual." *Terry*, 392 U.S. at 27. However, if an officer conducts a *Terry* stop without the requisite reasonable suspicion, any evidence recovered is "fruit of the poisonous tree" and must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963); *see United States v. Brown*, 448 F.3d

---

[1] Stallings also argued that the officers unlawfully arrested him, conducted an illegal search to recover the 9mm handgun, and seized the assault rifle incident to an illegal arrest. He has not renewed these arguments on appeal, and they are waived.

[2] The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231. Our jurisdiction arises under 28 U.S.C. § 1291. We review the District Court's factual findings for clear error and exercise plenary review over the District Court's application of the law to those facts. *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003).

4

239, 244 (3d Cir. 2006).

We assess whether reasonable suspicion existed based on "the totality of the circumstances" from the viewpoint of objectively reasonable law enforcement officers, which involves dealing not "with hard certainties, but with probabilities." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). In this regard, while we afford deference to law enforcement officers "draw[ing] on their own experience and specialized training to make inferences from and deductions about the cumulative information," acting on "a mere 'hunch'" is insufficient to satisfy the reasonable suspicion standard. *United States v. Arvizu*, 534 U.S. 266, 273–74 (2002) (quoting *Terry*, 392 U.S. at 27).

In addition to evaluating law enforcement officers' independent observations, where the genesis of an investigation involves an anonymous tip, we "must scrutinize the informant's "'veracity, reliability, and basis of knowledge.'" *United States v. Johnson*, 592 F.3d 442, 449 (3d Cir. 2010) (quoting *Alabama v. White*, 496 U.S. 325, 328 (1990)). "'[A]n anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity,' . . . however, there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (quoting *White*, 496 U.S. at 327, 329). The following factors are relevant to this inquiry:

> (1) [whether] the information was provided to the police in a face-to-face
> interaction, allowing an officer to assess directly the informant's credibility;
> (2) [whether] the informant can be held responsible if her allegations are
> untrue;
> (3) [whether] the information would not be available to the ordinary

5

observer;
(4) [whether] the informant has recently witnessed the criminal activity at issue; and
(5) [whether] the witness's information accurately predicts future activity.

*Johnson*, 592 F.3d at 449. However, "a tip need not bear all of the indicia—or even any particular indicium—to supply reasonable suspicion." *United States v. Torres*, 534 F.3d 207, 213 (3d Cir. 2008).

Parenthetically, our reasonable suspicion analysis, and that of the District Court before us, includes only "the facts available to the officer at the moment of the seizure." *Terry*, 392 U.S. at 21–22; *see also J.L.*, 529 U.S. at 271. The District Court found, and we agree, that Officer Rosado effectuated the *Terry* stop when he opened the driver's side door—an action that would have conveyed to a reasonable person that he was not free to leave—and Stallings submitted to this "show of authority." *Brown*, 448 F.3d at 245 ("A seizure occurs when there is either (a) 'a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,' or (b) submission to 'a show of authority.' (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991))); *Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir. 2003) (determining that investigative stop began when officer persisted in demanding that defendant roll down his car window after defendant had refused the initial request).

Officers Rosado and Marcellino were patrolling a neighborhood with a reputation for violent crime when a woman flagged them down to indicate that a man in a Cadillac with chrome rims had a gun. The interaction occurred face-to-face and the officers had

6

the opportunity to assess the woman's credibility and demeanor. *See United States v. Valentine*, 232 F.3d 350, 355 (3d Cir. 2000) ("[T]he circumstances support the reliability of the tip: [among other circumstances,] the officers could assess the informant's credibility as he spoke, knew what the informant looked like, and had some opportunity to find the informant if the tip did not pan out.").

Additionally, the information that the woman provided was immediately corroborated by the officers' independent observations as they drove around the corner, that is, the type of car, its location, and the description of the driver. *See United States v. Ritter*, 416 F.3d 256, 272 (3d Cir. 2005) ("The police corroboration of the anonymous tip's innocent details, the cases teach, bolsters the veracity and reliability of the tip . . . ."); *United States v. Nelson*, 284 F.3d 472, 483 (3d Cir. 2002) (finding that the reliability of an anonymous informant's tip was enhanced by the officers' ability to corroborate details related to the vehicle). The District Court did not err in concluding that the tip had sufficient indicia of reliability.[3]

The circumstances at the time of the seizure also informed the reasonable suspicion calculus. First, it was after dark when the woman approached the officers and the area was described in uncontradicted testimony as one prone to gun violence. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[O]fficers are not required to ignore the

---

[3] We see no need to address *United States v. Ubiles*, 224 F.3d 213 (3d Cir. 2000), and *United States v. Lewis*, 672 F.3d 232 (3d Cir. 2012), the very distinguishable cases on which Stallings primarily relies.

relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. . . . [T]he fact that the stop occurred in a high crime area is among the relevant contextual considerations in a *Terry* analysis.") (internal quotation marks and citation omitted); *Brown*, 448 F.3d at 251 (identifying the presence of a suspect in a high-crime area and the lateness of the hour as factors suggesting suspicious behavior). Second, some of Stallings' actions appeared evasive. He reclined his seat as far back as possible, ignored Officer Rosado when he knocked on the window, and continued to hold his cell phone in his left hand while his right hand remained hidden from view. Officer Rosado had reason to be concerned for his safety and for the safety of Officer Marcellino.

The District Court correctly concluded that, under the totality of the circumstances, reasonable suspicion supported the *Terry* stop of Stallings, and the motion to suppress was, therefore, properly denied.

**III.**

The judgment of sentence will be affirmed.

8