**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1770
_____

UNITED STATES OF AMERICA


v.

CHARLES BURTON
a/k/a Charles Roby

CHARLES BURTON,
                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-11-cr-00163-001)
District Judge: Honorable Michael M. Baylson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 25, 2013

Before: FUENTES, FISHER, and CHAGARES, *Circuit Judges*

(Opinion Filed:  July 24, 2013)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*

Charles Burton was charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Burton filed a motion to suppress evidence, arguing that there was no reasonable suspicion for officers to stop the car in which the firearm was discovered. The District Court denied his motion. After a jury trial, Burton was convicted, and the District Court sentenced him to 120 months' imprisonment. Burton appeals the denial of his motion to suppress and the imposition of his sentence. For the following reasons, we will affirm.

## I.

Because we write primarily for the parties, we recite only the facts essential to our disposition of this appeal.

On September 9, 2010, at approximately 1:10 a.m., a woman called 911 to report that there were five Hispanic men in a red car outside her house, three of whom had guns. She told police that the license plate number of the car was "EYM-6230." The complaint was transmitted over the radio, and Officers Pinkerton and Gorman responded to the call and met with the complainant. Pinkerton testified that at this point the complainant told the officers that the individuals in the car were "black males," App. 31, and she was afraid that the men were going to "shoot up her house." App. 26.

After the officers left the complainant's home, they observed an unoccupied red car parked a half block from her home, which had a license plate with the same first three letters as the plate the complainant reported. The officers proceeded to search the area

for the owners or occupants of the car. After a brief search, the officers returned to where the red car had been but it was gone.

Meanwhile, twenty minutes after the broadcast of the complainant's description of the vehicle over the radio, Officers Rommel and Biles observed a red car with the license plate "EYM-6380." Pinkerton later identified the car as "the same car that [he] had seen" parked near the complainant's home. App. 29. Rommel stopped the car and its five occupants, including Charles Burton, all of whom were African-American. The driver informed Rommel that there was a gun in the car, which he had a permit to carry. At this point, the officers ordered the driver and four passengers to exit the car and proceeded to conduct pat-down searches of all five individuals. Rommel testified that they did this "[b]ecause the call was for . . . three men armed with guns," and he wanted "everyone out of the vehicle for [the officers'] safety." App. 65. Once the men had exited the vehicle, Rommel observed a shotgun in the backseat where Burton had been sitting. Burton was arrested and charged with possession of a firearm by a convicted felon.

Before trial, Burton moved to suppress the shotgun, arguing that the stop was illegal because there was no basis for reasonable suspicion. After hearing the testimony of the officers, the District Court held that this was "a clear case of an appropriate car stop . . . under the principles of *Terry v. Ohio*." App. 85. The District Court found that there was sufficient evidence to support the stop, that the officers were authorized to have the occupants exit the car, and that the shotgun was discovered in plain view. Accordingly, the District Court denied the motion to suppress. After a trial and conviction, the District Court sentenced Burton to a term of 120 months' imprisonment.

3

## A. Motion to Suppress

In reviewing a district court's ruling on a motion to suppress, we review the underlying finding of facts for clear error and exercise plenary review over legal conclusions. *United States v. Silveus*, 542 F.3d 993, 999 (3d Cir. 2008).

Burton argues the car stop by police, which led to the discovery of the shotgun, was illegal because the officers did not have reasonable suspicion to support the stop. The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. However, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

When officers rely on a tip from an informant as the basis for reasonable suspicion for a *Terry* stop, we consider "the honesty of the caller, the reliability of his information, and the basis of his knowledge." *United States v. Torres*, 534 F.3d 207, 210-11 (3d Cir. 2008) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). We evaluate reliability based on five aspects of the tip; whether:

1. The tip information was relayed from the informant to the officer in a face-to-face interaction such that the officer had an opportunity to appraise the witness's credibility through observation.
2. The person providing the tip can be held responsible if her allegations turn out to be fabricated.

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. §§ 3231, 3583(e), and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

3. The content of the tip is not information that would be available to any observer . . . .
4. The person providing the information has recently witnessed the alleged criminal activity.
5. The tip predicts what will follow, as this provides police the means to test the informant's knowledge or credibility . . . .

*Id.* at 211.

In this case, there was sufficient reasonable suspicion to support the *Terry* stop. In response to the 911 call, police met with the complainant where she provided a description to Pinkerton of a red car, a license plate number, the car's occupants, and of the presence of guns. This satisfies the first, second, and fourth *Torres* factors. Her description of the guns and license plate number also was not available to any observer, satisfying the third factor. While Burton argues that the vehicle and occupants did not sufficiently match the complainant's description to constitute reasonable suspicion for a valid *Terry* stop, we do not agree. A search is supported by reasonable suspicion if an officer can "articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Wardlow*, 528 U.S. at 123-24 (internal quotation marks omitted). Furthermore, "due weight must be given . . . to the specific reasonable inferences which [an officer] is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27. The complainant described five African-American men in a red car with the license plate number EYM-6230, parked near her home. Soon after, police saw five men in a red car with a very similar license plate number. Furthermore, Officer Pinkerton testified that in his experience, witnesses often mistake portions of license plates. Thus,

5

we hold that there was a sufficient basis to support the District Court's finding of reasonable suspicion to stop the red car.

There was also a sufficient basis for officers to ask the occupants to exit the car in order to conduct a protective frisk. *See Pennsylvania v. Mimms,* 434 U.S. 106, 111-12 n.6 (1977) (holding that an officer's ordering the driver to exit the car during a lawful *Terry* stop is a *de minimis* intrusion and is thus permissible); *see also Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997) (holding that an officer may order passengers to exit the car because there is likely more danger to an officer when passengers are present). Given the complainant's tip that three of the men were armed and the driver's admission that he had a gun, there was reasonable suspicion to conduct a protective frisk of all occupants. *See Terry*, 392 U.S. at 27 ("The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.").

The District Court properly found that once the occupants were out of the car, the shotgun in the back seat was in plain view of the police and subject to seizure. *See United States v. Hensley*, 469 U.S. 221, 235 (1985) (holding that police may lawfully seize an object if, during the course of a lawful stop, the object is in plain view of the officer). Therefore, because the stop leading to the discovery of the shotgun was valid, we will affirm the District Court's denial of Burton's motion to suppress.

**B. Sentencing**

In reviewing the District Court's imposition of a sentence, we exercise plenary review over rulings on questions of law and its interpretation of the Sentencing Guidelines. *United States v. Doe*, 564 F.3d 305, 307 n.2 (3d Cir. 2009).

Burton contends that the District Court committed procedural error by failing to consider the factors set forth in 18 U.S.C. § 3553(a). Specifically, he claims that the District Court ignored the history and characteristics of the defendant. A district court need only "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). It is clear from our review that Burton addressed his history and characteristics before the District Court, focusing on his "unenviable" upbringing and the length of time between this conviction and his earlier convictions for robbery. App. 102-2.[2] The District Court specifically responded to Burton's history and characteristics, pointing out other convictions, between those for robbery and the one at issue, including convictions for assault, possession of a controlled substance, and driving under the influence. The District Court further responded to Burton's arguments and described him as "dangerous to the public" and a "terrible recidivist [who] doesn't seem to be able to conform his behavior to what society expects." App. 110. Thus, we are satisfied that the District Court set forth enough in its

---

[2] Due to a pagination error, this quotation falls on an unpaginated page between App. 102 and App. 103.

analysis of Burton's history and characteristics to establish a reasoned basis for its sentence.

In terms of whether the sentence was substantively reasonable, we will affirm a procedurally reasonable sentence "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc). Based on Burton's criminal history, including his numerous convictions for dangerous offenses, we cannot conclude that no sentencing court would have imposed this same sentence.

## III.

For the reasons discussed above, we will affirm the denial of Burton's motion to suppress and the sentence imposed by the District Court.