**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2940
_____

UNITED STATES OF AMERICA

v.

MICHAEL E. TORRES,
Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1-17-cr-00392-001)
District Judge: Honorable Yvette Kane
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
April 23, 2020

Before: PORTER, RENDELL and FISHER
*Circuit Judges*

(Filed: June 5, 2020)
_____

Heidi R. Freese, Federal Public Defender
Frederick W. Ulrich
OFFICE OF THE FEDERAL PUBLIC DEFENDER
100 Chestnut Street
Suite 306
Harrisburg, PA 17101

*Counsel for Appellant Michael Torres*

David J. Freed, United States Attorney
Carlo D. Marchioli,
OFFICE OF THE UNITED STATES ATTORNEY
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

*Counsel for Appellee United States of America*

———————

## OPINION OF THE COURT
———————

PORTER, *Circuit Judge*.

After a bench trial, the District Court found Michael Torres guilty of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The District Court imposed a fifteen-year mandatory-minimum sentence under 18 U.S.C. § 924(e) of the Armed Career Criminal Act ("ACCA") because it determined that Torres had three qualifying felony convictions.

Torres raises two arguments on appeal. First, he contends that the District Court erred by denying his motion to suppress the firearm. Second, Torres argues that his prior federal drug conspiracy conviction does not qualify as an ACCA predicate offense because it encompasses his other two substantive ACCA predicates. We will affirm. The firearm was discovered during a valid investigative stop. And we will join our sister circuits in holding that a drug conspiracy conviction counts as an ACCA predicate offense, so long as it was distinct in time from the underlying substantive offenses.

## I

Officer Steven Pickel of the City of York Police Department patrols York's west end. The west end is a high-crime area known for violent crime, such as homicides, shootings, drug incidents, and aggravated assaults. York police "regularly" investigate reports of "shots fired" in the west end, "especially in the evening." App. 48.

2

Around 6:00 p.m. on October 31, 2017, Officer Pickel drove his patrol car along the border between the west end and York College's campus. A man in a parked vehicle flagged the officer down. The man pointed to the only pedestrian on a bridge. The man said that the pedestrian was "wearing a black jacket with his hood up, blue jeans, and black sneakers" and that he pulled out a gun and fired it twice into an old factory building across the street. App. 48. The man was "adamant" about this description.[1] *Id.* The pedestrian was later identified as Torres.

Instead of asking for the man's name or recording his license plate number, Officer Pickel immediately radioed for backup and followed Torres in his patrol car. Officer Pickel feared that Torres posed a potential danger to others. And he knew from his training and experience that any delay would make it very difficult to locate Torres.

As other officers arrived, Officer Pickel activated his emergency lights and exited his patrol car. Based on the information that Torres had discharged a firearm, Officer Pickel drew his service pistol and ordered Torres to "get to the ground." App. 71. Torres complied, and two other officers, including Officer Jonathan Hatterer, approached Torres. Officer Hatterer knelt and asked Torres if he had a firearm. According to Officer Hatterer, Torres said that he did and then indicated that it was in his right pocket. Officer Hatterer handcuffed Torres while another officer retrieved the firearm.

A grand jury indicted Torres and charged him with violating 18 U.S.C. § 922(g)(1) by possessing a firearm as a convicted felon. Torres pleaded not guilty and moved to suppress the firearm. The District Court denied the motion. It determined that the officers found the gun in Torres's possession during an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968), rather than during an arrest. It further concluded that the stop was constitutional because Officer Pickel had reasonable suspicion to conduct the stop.

The District Court then held a bench trial and found Torres guilty. The Presentence Investigation Report ("PSR")

---

[1] Officer Pickel believed that his body camera captured the encounter, but it malfunctioned.

advised that Torres qualified for enhanced sentencing under 18 U.S.C. § 924(e) of the ACCA because he had at least three prior convictions for serious drug offenses. The PSR identified two state drug possession convictions, one federal drug distribution conspiracy conviction, and a felony conviction for attempted homicide. Torres objected to the enhancement, arguing that, because the state drug possession offenses were part of the federal drug distribution conspiracy, the drug conspiracy conviction should not be counted as a separate predicate offense. The District Court denied Torres's objection, applied the enhancement, and sentenced Torres to the mandatory-minimum sentence: 180 months' imprisonment. Torres timely appealed.

## **II**[2]

Torres argues that the officers violated the Fourth Amendment when they seized him, so the firearm should have been suppressed. He maintains that the seizure amounted to an arrest that lacked probable cause. Alternatively, he contends that even if the seizure were an investigatory stop, Officer Pickel lacked reasonable suspicion to detain him. We disagree. Officer Pickel conducted a valid investigatory stop to ensure officer safety and the safety of the community. And the stop was supported by reasonable suspicion because Officer Pickel received a reliable tip.

## **A**

"Generally, for a seizure [of a person] to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) (citing *Katz v. United States*, 389 U.S. 347, 356–57 (1967)). But a police officer may arrest a person in a public place without a warrant if the officer

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). For a motion to suppress, we review factual findings for clear error and legal conclusions de novo. *United States v. Johnson*, 592 F.3d 442, 447 (3d Cir. 2010). We review challenges to the application of an ACCA enhancement de novo. *United States v. Henderson*, 841 F.3d 623, 626 (3d Cir. 2016).

4

possesses probable cause to believe the person committed a felony. *United States v. McGlory*, 968 F.2d 309, 342 (3d Cir. 1992) (citing *United States v. Watson*, 423 U.S. 411, 421 (1976)). Or, "an officer may . . . conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30).

The Supreme Court has not established a bright-line rule to distinguish a warrantless arrest from an investigatory stop. But the "reasonableness of the intrusion is the touchstone" of our analysis. *Baker v. Monroe Township*, 50 F.3d 1186, 1192 (3d Cir. 1995) (citing *United States v. Sharpe*, 470 U.S. 675, 682–83 (1985)). The Supreme Court "ha[s] emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *Sharpe*, 470 U.S. at 685 (citations omitted). By these standards, Torres was subjected to an investigatory stop.

To begin, "[t]here is no per se rule that pointing guns at people, or handcuffing them, constitutes an arrest." *Baker*, 50 F.3d at 1193 (collecting cases); *see also United States v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995) (surrounding a suspect "with weapons ready, and even drawn, does not constitute an arrest per se"). *Terry* recognized that when officers are investigating a suspect who the officers reasonably believe "is armed and presently dangerous to the officer[s] or to others, it would . . . be clearly unreasonable to deny the officer[s] the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." 392 U.S. at 24.

Torres's case resembles the factual scenario we encountered in *United States v. Johnson*, 592 F.3d 442 (3d Cir. 2010). In *Johnson*, a witness called a 911 dispatcher to report that she saw two men struggling before hearing a gunshot. *Id.* at 445. After the gunshot, the witness watched a white taxicab depart the scene. *Id.* A short time later, police spotted a white taxicab in the vicinity and stopped it. *Id.* Officers surrounded the taxicab with guns drawn. *Id.* at 445–46. They ordered the occupants out of the car and handcuffed the defendant and the taxi driver so that they could "safely clear the vehicle and

5

gather information about the [reported] shooting." *Id.* at 446. Officers then discovered a handgun in plain view in the backseat of the car. *Id.* Under these facts, we held that the officers conducted an investigatory stop, not an arrest. *Id.* at 448.

So, too, here. Officer Pickel received a tip that Torres, just moments before, had discharged a firearm in a high-crime area. A brief encounter with police ensued. Only thirty-five seconds elapsed between the time when Officer Pickel ordered Torres to stop and when police secured Torres's firearm.[3] Thus, the seizure was an investigatory stop—not an arrest.

**B**

Because Torres was subjected to an investigatory stop, we next ask whether the stop was supported by reasonable suspicion. *Wardlow*, 528 U.S. at 123. It was.

Reasonable suspicion exists if an officer can "articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Id.* at 124 (quotation marks and citation omitted). "Reasonable suspicion requires only a particularized and objective basis for suspecting criminal activity" based on "the totality of the circumstances." *United States v. Green*, 897 F.3d 173, 183 (3d Cir. 2018) (citations, quotation marks, and alteration omitted). "We afford significant deference to a law enforcement officer's determination of reasonable suspicion." *United States v. Foster*, 891 F.3d 93, 104 (3d Cir. 2018).

Because Officer Pickel acted on an informant's tip, we must decide whether the tip was reliable. *United States v. Torres*, 534 F.3d 207, 210–11 (3d Cir. 2008). In doing so, we consider whether: (1) the information was provided to the police in person, allowing an officer to assess directly the informant's credibility; (2) the informant could be held responsible if his allegations are untrue; (3) the information would not be available to the ordinary observer; (4) the

---

[3] Torres tries to distinguish *Johnson*, arguing that Officer Pickel did not have as much detailed information as the officers in *Johnson*. But this goes to whether Officer Pickel had reasonable suspicion—not whether the encounter amounted to an arrest.

informant had recently witnessed the alleged criminal activity at issue; and (5) the informant's information accurately predicted future activity. *United States v. Brown*, 448 F.3d 239, 249–50 (3d Cir. 2006).

These factors are not exhaustive, and "a tip need not bear all of the indicia [of reliability]—or even any particular indicium—to supply reasonable suspicion." *Torres*, 534 F.3d at 213 (citation omitted). "Other factors can bolster what would otherwise be an insufficient tip," including "the presence of a suspect in a high[-]crime area[.]" *Id.* at 211 (alteration and citation omitted). At bottom, we must discern whether the tip had "sufficient indicia of reliability . . . for us to conclude that the officers possessed an objectively reasonable suspicion" to justify the stop. *Brown*, 448 F.3d at 250 (quoting *United States v. Nelson*, 284 F.3d 472, 481 (3d Cir. 2002)).

Based on the *Brown* factors, the tip was reliable. First, Officer Pickel interacted with the tipster face-to-face and thus could assess his credibility. The tipster waved down Officer Pickel and adamantly explained what he had personally witnessed. Second, Officer Pickel would likely be able to hold the man accountable if his allegation were untrue. Although Officer Pickel did not know the tipster's name or his car's license plate number, he did know what the man looked like and the make of the car that he drove. Third, the tipster had just witnessed the alleged criminal activity. *See Navarette v. California*, 572 U.S. 393, 400 (2014) (observing that a statement "made under the stress of excitement caused by a startling event . . . weigh[s] in favor of the [tipster's] veracity").

The fact that Torres was in a high-crime area also favors reliability. *See Torres*, 534 F.3d at 211. Shootings were reported "regularly" in the west end. App. 48. Considering all the circumstances, and "given . . . the danger posed by an armed criminal, we think that if [Officer Pickel] had done nothing and continued on [his] way after receiving the informant's tip, [he] would have been remiss." *United States v. Valentine*, 232 F.3d 350, 356 (3d Cir. 2000). In short, Officer Pickel had reasonable suspicion based on the totality of the

7

circumstances. *See Green*, 897 F.3d at 183. Thus, Torres's Fourth Amendment argument fails.[4]

## III

Torres next argues that he is not subject to the ACCA's enhanced mandatory-minimum sentence under § 924(e). Specifically, he maintains that, because his federal drug conspiracy conviction encompassed his two state drug possession convictions, the federal drug conspiracy conviction cannot count as one of the necessary predicate offenses. We disagree.

Under the ACCA, a fifteen-year mandatory-minimum sentence applies to any defendant who violates 18 U.S.C. § 922(g)(1) after receiving three or more convictions "for a violent felony or a serious drug offense, or both, *committed on occasions different from one another*[.]" 18 U.S.C. § 924(e)(1) (emphasis added). To decide whether convictions were committed on different occasions, we apply the separate episode test and analyze whether the offenses were "distinct in time." *United States v. Schoolcraft*, 879 F.2d 64, 73 (3d Cir. 1989) (per curiam).

We have held that three robberies carried out in four days were separate episodes because they "occurred on separate occasions" "and targeted different geographic locations and victims[.]" *United States v. Blair*, 734 F.3d 218, 228–29 (3d Cir. 2013) (quotation marks and citations omitted). In *Blair*, we cited with approval the decisions of two other Courts of Appeals, which held that robbery offenses were

---

[4] Torres faults Officer Pickel for failing to corroborate the tip before pursuing him. But we will not "second-guess the officer['s] decision to pursue the suspect immediately. The officer[] knew [that] the suspect was still in the vicinity[ ] and[,] had [the officer] stalled for more lengthy questioning of the informant, the armed suspect could have escaped detection." *United States v. Valentine*, 232 F.3d 350, 355 (3d Cir. 2000). Torres also attacks the reliability of the tip because he claims it came from an anonymous source. The identity of the source is irrelevant because the tip bore sufficient indicia of reliability under the totality of circumstances. *United States v. Torres*, 534 F.3d 207, 211 (3d Cir. 2008)

separate episodes even when committed less than an hour apart. *Id.* at 229 (citing *United States v. Pope*, 132 F.3d 684, 692 (11th Cir. 1998), and *United States v. Brady*, 988 F.2d 664, 668–70 (6th Cir. 1993) (en banc)).

We have not decided whether a felony conspiracy conviction qualifies as an ACCA predicate offense when it encompasses a defendant's other substantive predicate convictions. Our sister circuits have unanimously concluded that it does. For example, in *United States v. Melbie*, the Eighth Circuit held that a drug possession offense that occurred "during the period" of a drug conspiracy offense counted as a separate ACCA predicate because "the possession offense was a discrete episode in a series of events." 751 F.3d 586, 587 (8th Cir. 2014). The Eleventh and Sixth Circuits have adopted *Melbie*'s approach. *See United States v. Longoria*, 874 F.3d 1278, 1282 (11th Cir. 2017) (per curiam); *United States v. Pham*, 872 F.3d 799, 802–03 (6th Cir. 2017).

We agree and hold that a conspiracy offense counts as an ACCA predicate offense even when it covers other substantive ACCA predicate offenses, so long as the conspiracy offense is a "separate episode" that was distinct in time from the other offenses. *See Schoolcraft*, 879 F.2d at 73–74. A defendant's participation in a conspiracy may be broader than his underlying ACCA predicate convictions. Thus, the relevant inquiry is whether a defendant's underlying convictions were distinct episodes in the course of conduct constituting his participation in the drug conspiracy.

We have no difficulty concluding that Torres's drug possession offenses were "distinct in time" from his drug conspiracy offense. Torres's two state drug possession offenses occurred in July 2004 and July 2005, respectively. Yet his involvement in the federal drug conspiracy continued between July 2004 and February 2006. As Torres admitted while pleading guilty to the conspiracy charge, he committed numerous other overt acts: packing and dispensing drugs and handling money; attempting homicide to recover stolen drugs; contacting co-conspirators and the ringleader on numerous occasions; and exercising responsibility over large amounts of crack cocaine. Thus, Torres's participation in the conspiracy was broader than his two drug possession offenses. And rather

9

than withdraw from the conspiracy, he returned to it, even after his state drug convictions.

* * *

For these reasons, we will affirm the District Court's judgment.