PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1510
_____

UNITED STATES OF AMERICA

v.

JUSTIN RASHAAD BROWN,
Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-18-cr-00108-001)
District Judge: Honorable Sylvia H. Rambo
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 17, 2022

Before: HARDIMAN, SMITH and FISHER, *Circuit Judges*.

(Filed: August 29, 2022)

Ronald A. Krauss
Quin M. Sorenson
Office of Federal Public Defender

100 Chestnut Street, Suite 306
Harrisburg, PA 17101
  *Counsel for Appellant*

John C. Gurganus, United States Attorney
Carlo D. Marchioli, Assistant United States Attorney
Office of United States Attorney
Middle District of Pennsylvania
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108
  *Counsel for Appellee*

_____

OPINION OF THE COURT

_____


FISHER, *Circuit Judge*.

  Justin Rashaad Brown appeals his fifteen-year mandatory minimum sentence under the Armed Career Criminal Act ("ACCA") on the theory that his Pennsylvania marijuana convictions may no longer serve as ACCA predicate offenses following the federal decriminalization of hemp. We hold that, absent contrary statutory language, we look to federal law in effect at the time of commission of the federal offense when employing the categorical approach in the ACCA context. Because the state schedule matched the federal schedule in effect when Brown committed the federal offense triggering the ACCA enhancement, we will affirm his sentence.

## I.

In 2016, police officers in York County, Pennsylvania, conducted a series of controlled cocaine buys from Brown. Based on these purchases, the officers obtained a search warrant for Brown's apartment, which they executed on November 16, 2016. Inside the apartment, they discovered cocaine, scales, money, and Brown himself. The officers also found a loaded .38 caliber Ruger LCR revolver tucked under the couch cushion where Brown had been sitting.

Brown was indicted on multiple counts, including being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) on or about the date of the search. Per his agreement with the Government, Brown pleaded guilty to one charge of cocaine possession and distribution as well as the § 922(g) offense in July 2019 before the U.S. District Court for the Middle District of Pennsylvania. The Court sentenced him in 2021. At the time of sentencing, Brown had five prior Pennsylvania convictions for the distribution, or possession with intent to distribute, of controlled substances. One, from 2008, involved cocaine, and the remaining four, spanning from 2009 to 2014, involved marijuana.

Based on these prior convictions, the District Court held the ACCA applicable to Brown, triggering its fifteen-year mandatory minimum. The Court declined to decide whether he was a "career offender" under the U.S. Sentencing Guidelines, U.S.S.G. § 4B1.1, because it had already made the ACCA determination. It sentenced Brown to concurrent terms of 180 months' imprisonment on both counts.

Pursuant to a reservation in his plea agreement, Brown now timely appeals his designation under the ACCA.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231 (offenses against the laws of the United States). We have

3

jurisdiction under 28 U.S.C. § 1291 (appeal from final decision) and 18 U.S.C. § 3742(a) (appeal from sentence). We review de novo Brown's purely legal challenge to his enhanced sentence under the ACCA. *See United States v. Torres*, 961 F.3d 618, 622 n.2 (3d Cir. 2020).

III.

A.

Persons with prior felony convictions are forbidden from possessing a firearm under 18 U.S.C. § 922(g). *United States v. Daniels*, 915 F.3d 148, 150 (3d Cir. 2019). The ACCA, in turn, imposes a fifteen-year mandatory minimum sentence on offenders who violate § 922(g) and who have at least three prior federal or state convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). The ACCA defines "serious drug offense" as offenses listed in the Controlled Substances Act, Pub. L. No. 91-513, 84 Stat. 1242 (1970), and as state offenses involving substances on the Federal Schedules of Controlled Substances, 21 U.S.C. § 802, that carry a term of imprisonment of ten years or more. *See* 18 U.S.C. § 924(e)(2)(A).

Importantly, a state crime may not qualify as a "serious drug offense"—and thus may not serve as an ACCA predicate—if its elements are different from or broader than the generic version of that offense. *See United States v. Henderson*, 841 F.3d 623, 627 (3d Cir. 2016). Put another way, if the state law governing a particular offense criminalizes more conduct than its generic federal counterpart, then a state conviction for that offense may not count toward the ACCA's requirement of three prior offenses. *See Descamps v. United States*, 570 U.S. 254, 257–58 (2013); *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) ("By 'generic,' we mean the offenses must be viewed in the abstract, to see whether the state statute

4

shares the nature of the federal offense that serves as a point of comparison." (quoting *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 186 (2007))). This requires courts to compare federal and state law. *See United States v. Dahl*, 833 F.3d 345, 349, 353 (3d Cir. 2016). When undertaking this comparison, we employ the "categorical approach," which directs us to look solely at the elements of the compared crimes and to ignore the particular facts of a case. *Mathis v. United States*, 579 U.S. 500, 504 (2016).

Brown contends his prior state marijuana convictions may not serve as ACCA predicates because the crime of which he was convicted is no longer a categorical match to its federal counterpart. The Commonwealth's controlled substances statute forbids "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance." 35 Pa. Stat. Ann. § 780-113(a)(30).[1] A violation involving a controlled substance listed on Pennsylvania's Schedule I, such as marijuana, is a felony punishable by up to fifteen years' imprisonment. *Id.* §§ 780-113(f), 780-104(1)(iv). According to Brown, the definition of marijuana applicable to Pennsylvania's Schedule I is now broader than under federal law.

---

[1] We have previously held Pennsylvania's drug possession and distribution offense to be divisible by drug type, thus requiring the "modified categorical approach." *See United States v. Abbott*, 748 F.3d 154, 158–59 (3d Cir. 2014); *Henderson*, 841 F.3d at 625. Today, we need not delve down the rabbit hole of seeking to determine what crime Brown was convicted of, *see Mathis*, 579 U.S. at 505–06 (explaining the modified categorical approach), because both sides agree his prior convictions were for marijuana violations.

Pennsylvania law defines marijuana to consist of "all forms" and "every . . . derivative" of the cannabis plant. *Id.* § 780-102(b). The definition specifies limited exceptions, such as for the plant's "mature stalks" or the "fiber produced from such stalks." *Id.* For a long time, the federal definition was identical to the Commonwealth's in every material respect. It defined marijuana to mean "all parts" and "every . . . derivative" of the cannabis plant. 21 U.S.C. § 802 (effective July 22, 2016, to October 23, 2018). And it contained virtually identical exceptions. *See id.* (exempting, for instance, "the mature stalks of such plant" and "fiber produced from such stalks").

This changed when Congress passed its most recent farm bill. The Agriculture Improvement Act of 2018, Pub. L. No. 115-334, 132 Stat. 4490, removed "hemp" from the definition of marijuana. 21 U.S.C. § 802(16)(B). As defined by the Act, hemp means "any part" and "all derivatives" of the cannabis plant "with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639*o*(1). The upshot is that federal law now distinguishes between illegal marijuana and legal hemp based on delta-9 THC concentration. *See AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 690 (9th Cir. 2022); *Hemp Indus. Ass'n v. Drug Enf't Admin.*, 36 F.4th 278, 282 & n.3 (D.C. Cir. 2022). Pennsylvania law continues to make no such distinction.[2]

This brings us to the question at the center of this case: what is the proper comparison time to determine whether state

---

[2] Pennsylvania has adopted this same definition of hemp, *see* 3 Pa. Cons. Stat. § 702, but only in connection with industrial hemp research, not general possession or distribution. *Id.* §§ 701, 703–04.

and federal law are a categorical match? The potential for a categorical mismatch depends on whether we look to federal law before or after the enactment of the Agriculture Improvement Act. The Act went into effect December 20, 2018. So Brown pleaded guilty and was sentenced with the new federal definition of marijuana in place. But the old federal definition was in force when Brown committed the § 922(g) offense in 2016 as well as when he committed and was convicted of his state law offenses. There is no dispute that Brown's prior state convictions would be ACCA predicates without the changes to federal law introduced by the Agriculture Improvement Act. And the Government agrees with Brown that Pennsylvania's definition of marijuana is now broader than its federal counterpart. Consequently, we must resolve this timing question.

## B.

What is the right comparison time? Brown, citing several cases interpreting the Sentencing Guidelines, argues we look to the federal schedule at the time of federal sentencing. The Government argues we look to the federal schedule at the time of commission of the federal offense because of the federal saving statute.[3] We agree with the Government.

---

[3] Before the District Court, the Government did not invoke the saving statute, and it instead principally argued that we must look to the federal law in effect at the time of the state convictions. The Government only suggested in a brief footnote that the District Court may look to the time of federal commission. *See Spireas v. Comm'r*, 886 F.3d 315, 321 (3d Cir. 2018) ("Whether an argument remains fair game on appeal is determined by the degree of particularity with which it was

The federal saving statute, Act of Feb. 25, 1871, ch. 71, § 4, 16 Stat. 431, 432, provides that the "repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide." 1 U.S.C. § 109. The statute "has been held to bar application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense." *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 661 (1974). It "mandates that a court apply the penalties in place at the time the crime was committed unless [a] new law expressly provides otherwise." *United States v. Reevey*, 631 F.3d 110, 114 (3d Cir. 2010).

The saving statute controls here because the Agriculture Improvement Act effectively repealed federal penalties associated with federal marijuana convictions. Binding caselaw has given the statutory term "repeal" a capacious meaning that applies whenever a later statute indirectly

---

raised in the trial court . . . , and parties must do so with exacting specificity." (internal quotation omitted)). Nonetheless, we still consider this saving statute argument. Despite multiple opportunities, Brown has not argued that the Government waived or forfeited its reliance on the saving statute. As we have recognized, a "party can waive a waiver argument." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 250 (3d Cir. 2013). Similarly here, Brown has forfeited any waiver or forfeiture argument by not filing a reply brief (or even mentioning such an argument in his letters filed pursuant to Federal Rule of Appellate Procedure 28(j)). *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 146–47 (3d Cir. 2017) (explaining distinction between waiver and forfeiture).

8

diminishes the penalties imposed by an older statute. *See Dorsey v. United States*, 567 U.S. 260, 272 (2012); *United States v. Jacobs*, 919 F.2d 10, 12 (3d Cir. 1990) (holding that repealed statute that "merely classified offenses" fell within ambit of the saving statute). Here, the Agriculture Improvement Act, by changing the definition of marijuana, indirectly affected penalties associated with prior serious drug offenses for marijuana convictions. Thus, the Act effected a "repeal" within the meaning of the saving statute.

Under the saving statute's default rule, Brown "incurred" ACCA penalties at the time he violated § 922(g). "[P]enalties are 'incurred' under the older statute when an offender becomes subject to them, *i.e.*, commits the underlying conduct that makes the offender liable." *Dorsey*, 567 U.S. at 272; *see also Marrero*, 417 U.S. at 661; *Reevey,* 631 F.3d at 114. So, when Brown violated § 922(g)—when he possessed a firearm despite his prior felony convictions—he also implicated its penalty provisions. This included its fifteen-year mandatory minimum for offenders with three serious drug offenses. *See* 18 U.S.C. § 924(e)(1). If Brown's prior state convictions matched federal law at the time he committed the federal offense, then these convictions subjected him to the ACCA's mandatory minimum. Of course, federal statutes may modify this default rule; therefore, the next question we face is whether the Agriculture Improvement Act must be applied retroactively.

A statute may retroactively repeal prior penalties either "expressly," 1 U.S.C. § 109, or by "necessary implication." *Dorsey*, 567 U.S. at 274 (quoting *Great N. R. Co. v. United States*, 208 U.S. 452, 465 (1908)). Although the saving statute contemplates only express retroactivity, we must also consider implied retroactivity because of the longstanding principle that "one legislature cannot abridge the powers of a succeeding

legislature." *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 135 (1810). Thus, one Congress cannot compel a subsequent Congress to use "magical passwords" when writing and adopting legislation. *Dorsey*, 567 U.S. at 274 (quoting *Marcello v. Bonds*, 349 U.S. 302, 310 (1955)). We consider each type of repeal in turn.

Looking for express retroactivity, we are met with statutory silence. *See* Agriculture Improvement Act, §§ 10113–14, 12619, 132 Stat. at 4908–14, 5018. Plainly, the Act does not expressly make its new definition of marijuana applicable to offenses completed prior to the Act's date of enactment.

Whether the statute applies retroactively by "necessary implication" is a more involved inquiry, but one that still returns a negative answer. The Supreme Court's decision in *Dorsey v. United States* guides our analysis. 567 U.S. at 272–73. There, the Court considered whether the ameliorative sentencing changes introduced by the Fair Sentencing Act of 2010, Pub. L. No. 111–220, 124 Stat. 2372, would extend to defendants who committed offenses before the date of enactment. The Court observed that the Sentencing Reform Act of 1984, Pub. L. No. 98–473, 98 Stat. 1987, set forth a background principle that courts apply the Guidelines in effect at the time of sentencing. 567 U.S. at 275. It held Congress was presumably aware of this principle, which the Fair Sentencing Act implicitly directed courts to follow. *Id.* at 275–76 (interpreting language requiring Guidelines changes to occur "as soon as practicable" to "achieve consistency with . . . applicable laws," § 8, 124 stat. at 2374).

Here, by contrast, the Agriculture Improvement Act's decriminalization of hemp contains no language directing us, implicitly or otherwise, to the background principle embodied in the Sentencing Reform Act. The decriminalization of hemp does not come until the last section of the Agriculture

10

Improvement Act, which makes conforming changes to the Controlled Substances Act, but says nothing about sentences, let alone retroactivity. § 12619, 132 Stat. at 5018. Elsewhere, the Act makes other programs retroactive, *see* §§ 1401(e)(2)(B), 1431(d)(3), 132 Stat. at 4512–13, 4520, strongly suggesting the hemp provisions are not similarly backward-looking. *See Salinas v. U.S. R.R. Ret. Bd.*, 141 S. Ct. 691, 698 (2021). Moreover, *Dorsey* involved the interpretation of a statute explicitly related to sentencing. *See* 567 U.S. at 263–70. But the Agriculture Improvement Act is primarily devoted to agricultural and nutritional policy. *See* Cong. Research Serv., IF12047, Farm Bill Primer: What Is the Farm Bill? (2022). We hesitate to import background presumptions pertaining to one statutory area when reading a law on a wholly different subject matter, *see Bond v. United States,* 572 U.S. 844, 856–58 (2014) (discussing background presumptions), and we decline to do so now.

Additionally, in *Dorsey*, not interpreting the Act to apply retroactively would have created new arbitrary sentencing disparities. 567 U.S. at 276–78. Here, following Brown's proposed approach and applying the law in effect at the time of federal sentencing (in other words, applying the changed definition of marijuana retroactively to the time of conduct) would also create a significant and arbitrary disparity. Imagine a hypothetical defendant identical in all material respects to Brown and who committed the same § 922(g) offense on the same date in 2016, but who pleaded earlier and was sentenced in 2017. This defendant would receive a higher sentence than Brown despite both individuals having committed the same conduct at the same time. As we have long observed, "[i]f penalties are to differ because of an arbitrarily selected date, it seems fairer that the severity of the penalty depend upon the voluntary act of a defendant in choosing the

11

date of his criminal conduct than upon the date of sentencing . . . ." *Reevey*, 631 F.3d at 114 (quoting *United States v. Caldwell*, 463 F.2d 590, 594 (3d Cir. 1972)); *see also United States v. Jackson*, 36 F.4th 1294, 1300 (11th Cir. 2022). Any line-drawing exercise will create some arbitrariness, but declining to apply the Act retroactively grounds any disparity in a defendant's voluntary conduct.

Because the Agriculture Improvement Act does not make its new definition of marijuana retroactive either expressly or by necessary implication, we apply the penalties in effect at the time the defendant committed the federal offense. Therefore, for the purpose of the categorical analysis, we will look to the federal schedule in effect when Brown violated § 922(g).

C.

As a consequence of our ruling today, we necessarily reject the approach suggested by Brown, and adopted by at least one other circuit, which would have us look to the Sentencing Guidelines to decide the comparison time question under the ACCA. Rather, our holding aligns with the Eleventh Circuit, which, on similar facts, also held that courts must look to the federal law in effect when the defendant committed the federal offense. *See Jackson*, 36 F.4th at 1299–300. As the Eleventh Circuit sensibly reasoned, this rule gives a defendant notice "not only that his conduct violated federal law, but also of his potential minimum and maximum penalty for his violation and whether his prior felony convictions could affect those penalties." *Id.* at 1300.

We part ways with the Fourth Circuit, which, when faced with the same categorical inquiry in the ACCA context, held that courts must look to federal law in effect when the defendant is sentenced federally. *See United States v. Hope*, 28

12

F.4th 487, 504–05 (4th Cir. 2022). The Fourth Circuit based its decision on the requirement that federal courts use the version of the Guidelines "in effect on the date that the defendant is sentenced." *Id.* at 505 (quoting U.S.S.G. § 1B1.11). The federal sentencing statute likewise mandates use of the Guidelines in effect at federal sentencing. *See* 18 U.S.C. § 3553(a)(4)(A)(ii). But neither *Hope* nor this case are Guidelines cases. We are instead faced with a Congressionally prescribed mandatory minimum sentence under the ACCA, which omits a similar directive. *See id.* § 924(e). And as explained above, we detect nothing in the text of the Agriculture Improvement Act telling us to import background principles applicable to Guidelines cases into the ACCA inquiry of whether a prior offense is a "serious drug offense." We thus remain bound by the saving statute and must respectfully disagree with the Fourth Circuit.

For this same reason, Brown's reliance on several Guidelines cases is misplaced. *See United States v. Abdulaziz*, 998 F.3d 519, 521–22 (1st Cir. 2021); *United States v. Bautista*, 989 F.3d 698, 701 (9th Cir. 2021); *United States v. Miller*, 480 F. Supp. 3d 614, 624 (M.D. Pa. 2020). We take no view on the correctness of any of these opinions. Instead, we merely note that longstanding principles of statutory interpretation allow different results under the Guidelines as opposed to under the ACCA. *See Dorsey*, 567 U.S. at 291 (Scalia, J., dissenting) ("We may . . . hold[] that [18 U.S.C.] § 3553(a)(4)(A)(ii) applies to Guidelines amendments, and [1 U.S.C.] § 109 to statutory ones.").

Brown contends our precedent requires us to follow Guidelines caselaw in ACCA cases. He points to *United States v. Marrero*, where we stated that "cases involv[ing] sentencing enhancements under the . . . ACCA . . . nevertheless bind our [Guidelines] analysis." 743 F.3d 389, 394 n.2 (3d Cir. 2014), *abrogated on other grounds by Johnson v. United States*, 576

U.S. 591 (2015). Even assuming the inverse proposition follows logically from *Marrero*, the case does not help Brown. *Marrero* observed that "substantial similarity" between an ACCA and a Guidelines provision—in that case, the since-invalidated residual clause—may require applying the law from one area directly to the other. *Id.* (quoting *United States v. Herrick*, 545 F.3d 53, 58 (1st Cir. 2008)). However, this does not require us to overlook material textual differences between the ACCA and the Guidelines. *Compare* 18 U.S.C. § 924(e), *with id.* § 3553(a)(4)(A)(ii). We therefore decline to look to the Guidelines to determine the timing of the ACCA categorical analysis.

Our decision is not inconsistent with Supreme Court precedent in *McNeill v. United States*, 563 U.S. 816 (2011), and accords with our precedent in *Martinez v. Attorney General*, 906 F.3d 281 (3d Cir. 2018). *McNeill* concerned an intervening change to state sentencing law. After the defendant was convicted at the state level, but before he committed his federal offense, North Carolina reduced the maximum sentence applicable to the defendant's prior state offenses to fewer than ten years. 563 U.S. at 818. The *McNeill* Court clarified that to determine whether these prior state offenses were "serious drug offense[s]" courts must look to the state law as it existed at the time of the state conviction. *Id.* at 820; *see also id.* at 822 ("[A]bsurd results . . . would follow from consulting current state law to define a previous offense."). Other circuits, though they may disagree on other aspects of the categorical approach, have uniformly understood *McNeill* to prescribe only the time for analyzing the elements of the state offense. *See Jackson*, 36 F.4th at 1306; *Hope*, 28 F.4th at 505; *Bautista*, 989 F.3d at 703; *Abdulaziz*, 998 F.3d at 526. *McNeill* thus presents no barrier to looking to the time of

14

commission of the federal crime to determine the elements of the federal offense.

In *Martinez*, we looked to the elements of the federal offense at the time of the state conviction, but the reasoning of that case, which arose in the immigration context, compels a different result under the ACCA. *See* 906 F.3d at 283–84, 287. Under the statutory scheme relevant there, noncitizens are deportable if they have been convicted of a violation "relating to a controlled substance" under state or federal law. 8 U.S.C. § 1227(a)(2)(B)(i). In that context, the state conviction directly triggers the federal consequence of deportability. *See Martinez*, 906 F.3d at 283–84; *see also Mellouli v. Lynch*, 575 U.S. 798, 805 (2015) ("Congress predicated deportation on convictions, not conduct . . . ." (internal quotation omitted)); *Khan v. Att'y Gen.*, 979 F.3d 193, 201 (3d Cir. 2020) ("The immigration consequences of a criminal conviction are typically fixed at the time of conviction . . . ."). Nonetheless, the *Martinez* petitioner argued his state cocaine offense was not a categorical fit with the analogous federal offense because the federal definition of cocaine was narrower than the state definition at the time of his immigration proceeding. 906 F.3d at 287. We disagreed and concluded instead that the categorical fit was to be evaluated when federal consequences attached, that is, when the petitioner was convicted of his state offense. *Id.* At that time, the state definition of cocaine and the federal definition "were identical." *Id.* Accordingly, we held that his state conviction was a qualifying predicate offense that made him removable.

Here, Brown's argument similarly "depends on the premise that the present lists control, not the lists in effect when [federal consequences attached]." *Id.* But just as in *Martinez*, "the categorical approach directs us to compare the schedules at the time" Brown faced federal consequences for his conduct. *See id.* Under the ACCA, this is when Brown violated § 922(g)

15

because the statute's enhanced penalties are contingent on the defendant committing a separate federal offense following his state convictions. *See Abdulaziz*, 998 F.3d at 531 (describing difference between criminal sentence enhancement context and immigration context); *Doe v. Sessions*, 886 F.3d 203, 208–09 (2d Cir. 2018) (looking to time of state conviction in immigration context because it promotes predictability). Thus, our conclusion in this case is consistent with our reasoning in *Martinez*.

***

Having established that we look to the federal schedule when the defendant committed the federal offense and having rejected arguments to the contrary, we are left with the final task of assessing the categorical match between the state and federal schedules. As previewed, this point is not really in dispute. Comparing Pennsylvania's definition of marijuana—which has remained unchanged at all times relevant to this appeal—to the federal definition in effect when Brown committed his § 922(g) offense produces a categorical match. Brown was therefore properly subject to the ACCA's enhanced penalties.

IV.

Under the federal saving statute, a defendant incurs penalties at the time of commission of an offense. Consequently, we hold that, absent contrary statutory language, we look to federal law in effect at the time of commission of the federal offense when using the categorical approach to determine if prior offenses are ACCA predicates. When officers found Brown in possession of a firearm in violation of § 922(g) in 2016, the federal definition of marijuana was a categorical match to the Pennsylvania definition. Therefore, we will affirm Brown's sentence.