# United States Court of Appeals for the Fifth Circuit

---

No. 22-11007

---

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ANDREW OCANAS GARZA,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:21-CR-120-1

---

Before JOLLY, ENGELHARDT, and OLDHAM, *Circuit Judges*.

PER CURIAM:

Andrew Ocanas Garza's latest brush with the law included an un-*Mirandized* statement: he was asked and then told officers that he had a gun in his bedroom as they were about to execute a search warrant based on months of drug trafficking activities observed at his house. Garza attempted but ultimately failed to suppress this "bedroom gun" statement (hereafter referred to as the "Bedroom Gun" statement) pretrial after the District Court found that *Miranda*'s public safety exemption applied. Garza nevertheless affirmatively injected this statement into his trial in front of the

No. 22-11007

jury, even though the government never brought it up with the witness who would have testified about it.

After conviction on all but one count at trial, Garza received a 235-month sentence. The District Court employed a felony drug offence sentencing enhancement when it imposed its sentence based on two finalized 2016 federal convictions Garza had for trafficking over 50kg of marijuana. Garza claims this is error because a 2018 amendment to the Agricultural Improvement Act ("AIA") removed "hemp" from marijuana's definition, his 2016 convictions could have been based on hemp, and so these convictions should not be used as a foundation for the felony drug offense sentencing enhancement. He also claims the District Court erred by not suppressing the Bedroom Gun statement.

Garza stands at the losing end of these arguments. Garza waived his right to complain of the Bedroom Gun statement by affirmatively eliciting it at trial in front of the jury, and regardless the public safety exemption applies for the reasons noted in the District Court's thorough opinion. As for the felony drug offense sentencing enhancements, the weight of precedent militates against Garza's post-conviction definitional parsing. What matters is that, *at the time Garza was convicted in 2016*, hemp was included in marijuana's definition and those convictions were final at the time the District Court sentenced him here. Finalized felony drug convictions serve as the prototypical basis for implementing a felony drug offense sentencing enhancement. Even if the District Court erred by imposing this enhancement, such error was harmless: it still would have imposed the same sentence by stacking Garza's counts, and the evidence demonstrates that the District Court did not abuse its discretion in weighing out the relevant sentencing factors. We therefore AFFIRM the District Court's judgment and sentence.

# I. Factual and Procedural Background
## A. Relevant Factual Background

Garza has a long history of drug and violent offences, including involvement as a high-volume distributor of black-market marijuana. The DEA obtained a warrant to search Garza's home after several months of observing behavior consistent with continued black-market participation during the summer of 2021. They executed that warrant on September 16, 2021. Officers arrived, saw Garza backing his truck into his driveway, and immediately ordered him to exit the vehicle and surrender peaceably, which he did. While prone and handcuffed, Garza informed officers that his wife, Cassandra Ortiz, was inside the house, in response to being asked if there was anyone within. As some officers helped Garza off the ground, others surrounded the house and trained their pistols and rifles on it.

When asked to hand over his keys, Garza responded that the house was unlocked, that his dogs were inside, and said "don't kill my dogs this time." Officers moved Garza away from the house and called Ortiz several times, but she never answered. Garza re-urged his concerns for his dogs, saying that "last time" his dogs were killed and that he currently owned two pit bulls and a shih tzu. Officers spotted movement in a window and confirmed that the dogs, not Ortiz, were the movement's source. When first asked whether any guns were inside the house that Ortiz could access for the first time, Garza said no.

Officers then took Garza to the front door, flanked by the breach team and other officers who had their weapons trained on the house's doors and windows. Officers then asked Garza whether Ortiz could secure the dogs, to which he responded yes and warned that the dogs could become aggressive upon seeing the officers. Officers then knocked on the door, Ortiz answered, and both she and Garza were taken to the side of the house. Ortiz told the

officers that the big dogs were in the backyard, the small dog was inside, and no one else was in the home.

As the breach team entered the house, Garza was again asked if there was a firearm in the home by a DEA agent on scene. This time, Garza responded in the affirmative: there was a small firearm in the master bedroom. The agent Garza informed relayed that information to the breach team, and they spotted a pistol on a dresser in the master bedroom during the secondary safety sweep. The house secured, the search team moved in and found approximately 1.75kg of marijuana in vacuum-sealed bags, a drug ledger resembling one seized from Garza in a prior investigation, over $80,000 in cash, and a .32 caliber pistol.

### B. Relevant Procedural Background

A grand jury charged Garza with four counts: (1) conspiracy to possess with intent to distribute and to distribute marijuana, (2) possession with intent to distribute marijuana, (3) possession of a firearm in furtherance of a drug-trafficking crime, and (4) unlawful possession of a firearm by a felon. Garza moved pretrial to suppress the Bedroom Gun statement, which the government conceded was made un-*Mirandized* but asserted fell within the public safety exemption. The District Court issued a thorough opinion where it ultimately denied Garza's motion, holding that the statement fell within the public safety exemption.

Garza went to trial on all four counts. During trial, the defense affirmatively elicited the very statement it attempted to suppress when cross-examining Sgt. Macias in front of the jury:

> Q: You're aware, right as the entry team was coming in, they did get word that, oh, yeah, there was some firearm on a dresser. Right?
>
> A: I was made aware of that at the suppression hearing, yes, sir.

Q: So at some point, you're aware that Mr. Garza did tell officers, oh, yeah, there's something in there. Right?

A: I don't have firsthand knowledge of that.

Q: You don't?

A: No sir.

Q: But you learned that at a previous hearing that was – that's what some officer testified to?

A: That's correct.

Before this, the Bedroom Gun statement had *not* been brought into the trial; it was Garza who opened the door to it by discussing it first. The jury ultimately returned a split verdict: guilty on all counts save count 3.

Onward to sentencing. Garza's PSR noted two 2016 final federal convictions from New Mexico for conspiracy to possess with intent to distribute at least 50kg of marijuana. This led to an advisory guideline range of 188–235 months after accounting for the consequent felony drug offence enhancement. Garza objected, arguing that his 2016 federal convictions did not qualify as felony drug offenses because the AIA included hemp in the definition of marijuana at the time he was convicted, but was removed after the AIA's 2018 amendments were enacted. According to Garza, the AIA's 2018 amendment excluding hemp meant that using the pre-amendment definition of marijuana (which *did not* exclude hemp) couldn't qualify as a "felony drug offense" at the time of sentencing.

The government responded that, while this circuit had yet to speak on this specific issue, sister courts of appeal that had reviewed it rejected Garza's approach. Garza conceded that no courts of appeal accepted his argument at this time but blamed it on failures to preserve the issue. The District Court disagreed with Garza, noting that its reading of the law revealed that other courts of appeal addressed the issue without relying on

plain error analyses. Overruling Garza's objection, the District Court agreed with the PSR's recommended range of 188–235 months.

The District Court then moved on to Garza's sentencing factors. It began with his repeated drug-dealing activity concerning tens of kilograms of black-market marijuana, refusal to accept responsibility, and a pretrial finding that Garza directed a relative to confront a cooperating witness (which he/she did) then post a picture of the witness on Facebook to identify him/her as a "snitch." This conduct was, to the District Court, "completely inexcusable [and] an affront to the dignity of this Court and to the rule of law." It then considered Garza's (very extensive) criminal history, including the above-mentioned felony drug convictions, evading arrest, assault, possession of between two to four hundred pounds of cocaine, possession of between two to four hundred pounds of meth, associated criminal conspiracy charges, and revocation of supervised release. The District Court concluded that it was clear that Garza was "going to do what [he] want[ed] to do regardless of what the law says."

The District Court then sentenced Garza to 235 months, applying the felony drug offense enhancement while doing so. It then explained that, even if the felony drug offense enhancement did not apply, it would have exercised its discretion to impose the same sentence by fully stacking the first two guilty counts (both of which possess a 60–month statutory max if the felony drug enhancement does not apply) and partially stacking the third (which possesses a 120–month statutory max) to reach the same 235–month sentence imposed. Garza timely appealed.

No. 22-11007

## II. Discussion

### A. Garza Invited Error by Affirmatively Injecting the Bedroom Gun Statement into Trial in Front of the Jury.

Normally, pretrial motions to suppress preserve a defendant's exclusion arguments, so that the defendant need not reassert those arguments at trial. *See, e.g.*, *United States v. Cruz*, 581 F.2d 535, 542 (5th Cir. 1978) (en banc), o*verruled on other grounds by United States v. Causey*, 834 F.2d 1179, 1184 (5th Cir. 1987) (en banc); *see also United States v. Ahedo*, 453 F. App'x 544, 547 (5th Cir. 2011). Indeed, a defendant who moves for pretrial suppression can engage that evidence at trial when it is admitted and do "his best to turn that evidence to his favor" without risking waiver. *Cruz*, 581 F.2d at 542 (5th Cir. 1978). But an exception exists.

The Supreme Court notes that "th[is] rule is one of practice and is not without exceptions, nor is it to be applied as a hard-and-fast formula to every case regardless of its special circumstances." *Lawn v. United States*, 355 U.S. 339, 353 (1958). In *Lawn*, the Supreme Court held that the defendant waived the issues he raised in a denied pretrial motion to suppress by making use of the arguably objectionable evidence at trial. *Id.* at 353–55. *See also, e.g.*, *United States v. Davis*, 487 F.2d 112, 121 (5th Cir. 1973) ("Reference to or use by a defendant of an erroneously admitted line of evidence ordinarily cures or waives error.").

This is not a case where the government introduced Garza's complained-of statement and he did his "best to turn that evidence to his favor." *Cruz*, 581 F.2d at 542. Indeed, the government did *not* discuss the Bedroom Gun statement with the agent to whom Garza uttered it when he was tendered as a witness. Instead, the jury heard *nothing* about the Bedroom Gun statement before Garza's counsel brought it up during Sgt. Macias's cross examination, even doing so over Sgt. Macias's warning that he lacked firsthand knowledge.

7

No. 22-11007

Garza's affirmative, unprompted injection of the Bedroom Gun statement by drawing it out of Sgt. Macias in the jury's presence opened the door to its use at trial; Garza cannot complain of this "invited error." *See United States v. Green*, 272 F.3d 748, 754 & n.19 (5th Cir. 2001) (observing that "[t]he doctrine of invited error provides that 'when injection of inadmissible evidence is attributable to the actions of the defense, the defense cannot later object to such "invited error."'" (quoting *United States v. Raymer*, 876 F.2d 383, 388 (5th Cir. 1989))). Put more broadly, Garza's unprompted, affirmative introduction of the Bedroom Gun statement into a trial where it had not appeared is inconsistent with a belief that it should not have been before the jury. *See Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010) ("As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford."); *see also Hemphill v. New York*, 595 U.S. 140, 157 (2022) (Alito, J., concurring) (observing defendants can waive a right when they "engage[] in a course of conduct that is incompatible with a demand" to enforce that right). Garza thus waived this issue through invited error.[1]

———————————————

[1] Even if Garza did not waive this issue through invited error, the District Court's comprehensive opinion denying Garza's motion to suppress the Bedroom Gun statement under the public safety exception was correct.

### B. The District Court Correctly Applied the Felony Drug Offense Enhancement to Garza's Sentence.

The District Court, lacking binding guidance, implemented the "backward-looking" test that three of our sister circuits employ when evaluating whether a prior drug offense qualifies for the felony drug offense sentencing enhancement. *See United States v. Diaz*, 838 F.3d 968 (9th Cir. 2016); *United States v. Santillan*, 944 F.3d 731 (8th Cir. 2019); and *United States v. Brown*, 47 F.4th 147 (3d Cir. 2022). The key inquires for that test as applied here are whether Garza's 2016 drug offenses were (1) felonious at the time Garza was convicted for them and (2) final at the time he was being sentenced for the crimes at issue. *See id.* They undisputedly were, so the District Court applied the enhancement. It did so correctly.

21 U.S.C. § 841(b)(1)(D) (the statute Garza was convicted under) provides that, if a person commits an offense involving less than 50kg of marijuana "after a prior conviction for a felony drug offense has become final," the maximum punishment doubles to ten years. 21 U.S.C. 802(44) defines "felony drug offense" as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." Garza received his 21 U.S.C. § 851 notice that his prior felony convictions qualified him for this enhancement.

Garza argues that, because his 2016 convictions *could* have laid on a conspiracy involving hemp (which then fell within the AIA's definition of marijuana but was removed after the AIA's 2018 amendment), he is not eligible for the "felony drug offence" enhancement predicated on those offenses. Garza offers no on-point precedent in support of this position.

In contrast, the government offers, the District Court considered, and we find persuasive three cases from sister courts of appeal which militate against Garza's position, particularly in this context: *Diaz*, 838 F.3d 968; *Santillan*, 944 F.3d 731; and *Brown*, 47 F.4th 147. The Ninth, Eighth, and Third Circuits employed the same inquiry as the District Court: whether the prior drug offense was (1) a felony at the time of the defendant's prior conviction and (2) final at the time of sentencing the defendant for the crime(s) currently in question. *See Diaz*, 838 F.3d at 971–74; *Santillan*, 944 F.3d at 733; *see also Brown*, 47 F.4th at 150–51. For these circuits employing this "backward-looking inquiry," "a prior conviction qualifies as a 'felony drug offense' if it was punishable as a felony *at the time of conviction*." *Santillan*, 944 F.3d at 733 (emphasis added).

Applying the "backward-looking" test here, Garza cannot (and does not) dispute (1) that his prior drug convictions qualified as felony drug offenses *at the time he was convicted of them* in 2016 and (2) that those convictions were final at the time the District Court sentenced him in this case. The 2016 felony drug offenses thus served as sufficient foundation Garza's felony drug offense sentencing enhancement.[2]

### III. Conclusion

We AFFIRM the District Court's judgment and sentence for the reasons discussed above.

---

[2] Even if the District Court had erred, such error was harmless. There is ample "evidence in the record . . . that the district court had a particular sentence in mind and would have imposed it, notwithstanding [an] error made in arriving at [Garza]'s guideline range," *United States v. Delgado-Martinez*, 564 F.3d 750, 753 (5th Cir. 2009), and it did not abuse its discretion in sentencing Garza as it did. *United States v. Smith*, 440 F.3d 704, 708 (5th Cir. 2006).